IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WEST BEND MUTUAL INSURANCE COMPANY, | ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 09-cv-354 ) ) Honorable Amy J. St. Eve |
| BELMONT STATE CORPORATION, JAN GAD, MARK GIZYNSKI, KIRK FORBES AND PETER WALA, | ) ) ) ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Before the Court is Plaintiff West Bend Mutual Insurance Company's ("West Bend") Motion to Impose Constructive Trust on Funds Paid to Banco Popular Banco Popular North America ("Banco Popular"). For the following reasons, the Court denies West Bend's motion.

**BACKGROUND**

**I.      Procedural History**

West Bend's Amended Complaint in this case alleges claims for, *inter alia*, fraud, conspiracy, RICO claims, and breach of contract arising out of West Bend's issuance of a bond to Defendant Belmont State Corporation ("Belmont") for public projects and Belmont's ensuing failure to pay its subcontractors and suppliers. The subcontractors and suppliers made claims on West Bend's bond, and West Bend paid the claims. On September 17, 2009, the Court entered default judgment against Belmont, and individual defendants Mark Gizynski and Peter Wala, in the amount of $2,150,33.60. (R. 25-1.) The Court vacated the default as to Defendant Wala on April 16, 2010.

With respect to Banco Popular, West Bend served Banco Popular with a third party citation to discover assets on October 29, 2009. Banco Popular responded by providing documents and information to West Bend regarding the application of checks drawn on Belmont's checking account payable to Banco Popular, and applied to the personal debt of Gizynski. West Bend now seeks to impose a constructive trust against Banco Popular for this uncollected judgment.

## II.  Facts Relating to Banco Popular

Defendant Gizynski obtained a personal loan from Banco Popular secured by a mortgage and assignment of rents on property he owned located at 4938-44 W. Belmont Avenue, Chicago, Illinois. (R. 46-1, Ex. A, Gizynski Dep., 54; Ex. B.) Defendant Gizynski renewed the loan on July 5, 2009. (R. 46-1, Ex. B.) Belmont was a tenant at 4942 W. Belmont Avenue, Chicago, Illinois and Banco Popular has a copy of the lease between Gizynski and Belmont in its underwriting file. *Id.* According to Banco Popular, Belmont has never held an account at Banco Popular. *Id.*

Gizynski testified that Belmont maintained a bank account at U.S. Bank, and that he was the sole signatory on that account. (R. 46-1, Ex. A, Gizynski Dep., 23, 72.) During 2008, Gizynski signed a series of checks drawn on Belmont's account at U.S. Bank totaling $107,564.03 and applied those checks to his mortgage with Banco Popular. (R. 46-1, Ex. A, Gizynski Dep., 73, Ex. 16 Ex. B.) Gizynski testified that he was not authorized to apply funds in Belmont's U.S. Bank account to his personal debt. *Id.* at 25. Gizynski also testified, however, that Jan Gad, the individual to whom Gizynski testified that he sold Belmont, owed him rental fees, and that he accordingly paid for his mortgage with Belmont funds. *Id.* at 25, 73-74.

2

**LEGAL STANDARD**

I. **Constructive Trust**

"Under Illinois law, 'a constructive trust is imposed to prevent unjust enrichment by imposing a duty on the person receiving [a] benefit to convey the property back to the person from whom it was received.'" *Dexia Credit Local v. Rogan*, 624 F. Supp. 2d 970, 983 (N.D. Ill. 2009) (citing *Martin v. Heinold Commodities, Inc.*, 163 Ill. 2d 33, 56, 643 N.E.2d 734, 745, 205 Ill. Dec. 443 (1994)). "In order to impose a constructive trust, it is sufficient that a party has received money properly belonging to another under circumstances that, in equity, the party ought not be allowed to retain." *Jackson v. Callan Publishing, Inc.*, 356 Ill. App. 3d 326, 334, 826 N.E.2d 413, 423, 292 Ill. Dec. 272 (2005). "A trust may be imposed even when the ultimate recipient of the property is an innocent party." *Dexia Credit Local*, 624 F. Supp. 2d at 983.

II. **Illinois Fiduciary Obligations Act**

Section 5 of the Illinois Fiduciary Obligations Act (the "Act") provides:

> If a check or other bill of exchange is drawn by a fiduciary as such, or in the name of his principal by a fiduciary empowered to draw such instrument in the name of his principal, the payee is not bound to inquire whether the fiduciary is committing a breach of his obligation as fiduciary in drawing or delivering the instrument, and is not chargeable with notice that the fiduciary is committing a breach of his obligation as fiduciary unless he takes the instrument with actual knowledge of such breach or with knowledge of such facts that his action in taking the instrument amounts to bad faith. If, however, such instrument is payable to a personal creditor of the fiduciary and delivered to the creditor in payment of or as security for a personal debt of the fiduciary to the actual knowledge of the creditor, or is drawn and delivered in any transaction known by the payee to be for the personal benefit of the fiduciary, the creditor or other payee is liable to the principal if the fiduciary in fact commits a breach of his obligation as fiduciary in drawing or delivering the instrument.

760 ILCS 65/5.

**ANALYSIS**

**I.      Illinois Fiduciary Obligations Act**

In its motion, West Bend alleges that, "Gizynski, acting in the capacity of a fiduciary for Belmont, signed various checks drawn on Belmont's bank account at U.S. Bank, payable to Banco Popular, and caused the checks to be applied to his personal indebtedness owed by Gizynski to Banco Popular, in breach of his fiduciary duty." (R. 46-1, West Bend's Mot. to Enforce Judgment by Imposition of Constructive Trust on Funds Paid to Banco Popular, 1.) Accordingly, West Bend argues, "[u]nder 760 ILCS 65/5, Banco Popular is liable to Belmont for the funds it received." *Id.*

West Bend brought its initial motion pursuant to Section 5 of the Act which "relieves banks of liability for negligence and serves as a defense against allegations of negligence." *Time Savers, Inc. v. LaSalle Bank, N.A.*, 371 Ill. App. 3d 759, 768, 863 N.E.2d 1156 (Ill. App. Ct. 2007) (citing *Continental Casualty Co. v. American National Bank & Trust Co. of Chicago*, 329 Ill. App. 3d 686, 702, 768 N.E.2d 352 (Ill. App. Ct. 2002)). "The purpose of the Act is to facilitate banking and financial transactions and to cover situations which arise when one person honestly deals with another person whom he knows to be a fiduciary. Mere suspicious circumstances are not enough to require a creditor to inquire about the fiduciary's actions." *Hosselton v. K's Merchandise Mart*, 247 Ill. App. 3d 808, 810, 617 N.E.2d 797 (Ill. App. Ct. 1993). Accordingly, in order to state a claim pursuant to 760 ILCS 65/5, West Bend must establish that Gizynski was a fiduciary of Belmont at the time that he deposited checks drawn on Belmont's U.S Bank account with Banco Popular to satisfy his mortgage. *See Pommier v. Peoples Bank Marycrest*, 967 F.2d 1115, 1119 (7th Cir. 1992) ("In order for [a litigant] to

4

establish the existence of a fiduciary relationship between him and [a financial institution], he must plead and be able to prove, by clear and convincing evidence, specific facts which would support such a finding.") (applying Illinois law and citing *Santa Claus Industries, Inc., v. First Nat'l Bank of Chicago*, 216 Ill. App. 3d 231, 238, 576 N.E.2d 326, 331 (Ill. App. Ct. 1991)); *see also Terre Haute Indus. v. Pawlik*, 765 F. Supp. 925, 929 (N.D. Ill. 1991) ("the Uniform Fiduciaries Act applies only 'to situations where the person depositing the check is known by the bank to be a fiduciary'") (internal citation omitted).

As Banco Popular argues in its response, however, West Bend has failed to establish that Gizynski was a fiduciary of Belmont during the relevant time period.[1] Indeed, Gizynski testified that he was formerly the owner of Belmont, but that he sold Belmont to Jan Gad three or four years prior to his deposition which occurred in January 2010. (R. 46-1, Ex. A, Gizynski Dep., 16-18.) While Belmont was a lessee of property owned by Gizynski in 2008, West Bend has presented no evidence or legal argument to the Court to establish that Gizynski was a fiduciary of West Bend at the time that he deposited funds drawn on Belmont's account to his mortgage at Banco Popular.

Indeed the only cases West Bend cites in support of its contention that Gizynski was a fiduciary of Belmont do not stand for the propositions stated by West Bend. West Bend cites *Great Southwest Life Ins. Co. v. Pruitt & Harp*, 61 P.2d 683, 685 (Okla. 1936), a non-controlling seventy year old case, for the proposition that "[w]hen a check is drawn on a corporate account, signed by an agent of the corporation, payable to the bank and is given to the bank by the person

---

[1] Banco Popular also argues that imposition of a constructive trust is not appropriate because (i) West Bend failed to plead facts establishing that Banco Popular had actual notice of the alleged misappropriation, and (ii) West Bend lacks standing under the Act. Because West Bend's failure to establish that Gizynski was a fiduciary of Belmont at the time of the relevant transactions with Banco Popular is dispositive of its motion pursuant to 760 ILCS 65/5, however, the Court will not address Banco Popular's remaining arguments.

5

signing the check, the bank knows it is dealing with an agent or fiduciary of the corporation."
(R. 66-1, West Bend's Response to Banco Popular's Objection, 3.) While the court in *Great Southwest* found that the form of checks issued by an agent were sufficient to put defendants on notice that the agent was his firm's funds to pay personal debts, the case involved a *known* agent/fiduciary. Moreover, *Johnson v. Citizens Nat'l Bank*, 30 Ill. App. 3d 1066, 1069-1070, 334 N.E.2d 295 (Ill. App. Ct. 1975) stands for a proposition directly contrary to West Bend's contention that "[a]n employee who has the authority to sign checks for his principal is deemed a fiduciary." (R. 66-1, West Bend's Response to Banco Popular's Objection, 4.) Instead, the *Johnson* court specifically noted, "[t]he purpose of the Act is to cover situations which arise when one person honestly deals with another *knowing him to be a fiduciary*." 30 Ill. App. 3d at 1069-70, 334 N.E.2d at 298 (emphasis added). The court explained that a fiduciary relationship was clear in that case due to a specific form of check which required the principal to agree to the payment of each draft:

> The parties stipulated that Mr. Wilham was a duly authorized agent of Federal. As such, he was clearly a "fiduciary" as it is defined in the Act. (Ill. Rev. Stat. 1967, ch. 98, § 234.) The drafts indicated, on their face, that Mr. Wilham was authorized to sign them. Since the drafts were "payable through", the Bank knew that Federal would be requested to specifically agree to payment of each draft before the drawee bank would remit the proceeds.

*Id.* Neither of these cases establishes that Gizynski was a fiduciary of Belmont.

Moreover, Banco Popular has submitted an affidavit of William Bolsen, Vice President of Commercial Real Estate Lending and the Banco Popular employee primarily in charge of Gizynski's loan account, that establishes that he did not have any knowledge that Gizynski had a fiduciary relationship with Belmont. (R. 62-2, Bolsen Aff., ¶¶ 1, 4, 14.) Additionally, West Bend provides no legal support for its conclusory assertion that Gizynski's testimony that he was

6

the sole signer on the corporate account and that his sole authority was to pay creditors of Belmont renders him a fiduciary at the time of the relevant transactions. In short, West Bend has made no showing that the Act applies to the facts of this case. *See, e.g., Terre Haute Indus.*, 765 F. Supp at 929 (claim pursuant to Illinois Fiduciary Obligations Act failed where there was no evidence that bank knew that individual was a fiduciary). West Bend's motion is accordingly denied in this regard.[2]

## II. Common Law Claims

In its reply brief, West Bend contends that, "if the Act does not apply, then the Bank is liable under common law for conversion of Belmont States' assets." (R. 66-1, West Bend's Response to Banco Popular's Objection, 4.)[3] West Bend, however, appears to conflate the common law means by which it may assert an interest in the funds held by Banco Popular. West Bend does not cite to or attempt to demonstrate that it meets the four required elements for an Illinois conversion claim. *See, e.g., Cirrincione v. Johnson*, 184 Ill. 2d 109, 703 N.E.2d 67, 70 (Ill. 1998) ("To prove conversion, a plaintiff must establish that (1) he has a right to the property; (2) he has an absolute and unconditional right to the immediate possession of the property; (3) he made a demand for possession; and (4) the defendant wrongfully and without authorization

---

[2] Banco Popular also argues that West Bend does not have standing pursuant to the Act because West Bend has subrogated the sub-contractors' rights and accordingly cannot subrogate Belmont's rights. Because Banco Popular only makes this argument in the context of West Bend's claim under the Act, which fails, the Court need not address it.

[3] West Bend also relies on the Uniform Commercial Code. The provision cited by West Bend, however, 810 ILCS 5/3-307(b)(1), (4), only applies to transactions involving fiduciaries: "If (i) an instrument is taken from a fiduciary for payment or collection or for value, (ii) the taker has knowledge of the fiduciary status of the fiduciary, and (iii) the represented person makes a claim to the instrument or its proceeds on the basis that the transaction of the fiduciary is a breach of fiduciary duty, the following rules apply . . . ." 810 ILCS 5/3-307(b); *see also Travelers Cas. & Sur. Co. of Am. v. Wells Fargo Bank N.A.*, 374 F.3d 521, 526 (7th Cir. 2004) (noting that duties imposed on banks that receive checks from customers drawn on a third party's account derive from tort law rather than contract law or UCC law). As do its claims pursuant to 760 ILCS 65/5, this claim fails because West Bend has failed to demonstrate Gizynski's status as a fiduciary or agent of Belmont at the time of the relevant transactions.

assumed control, dominion, or ownership over the property.") Because West Bend fails to develop its Illinois common law conversion argument, this claim is waived. *See United States v. Elst*, 579 F.3d 740, 747 (7th Cir. 2009) (arguments that are not developed in a party's briefs and that are unsupported by legal authority are waived).

Instead, West Bend focuses its argument on the separate and distinct common law principle regarding a bank's duty to inquire as to the drawer of a check. The Court will address this argument, which West Bend premises on the Seventh Circuit's opinion in *Mutual Service Casualty Ins. Co. v. Elizabeth State Bank*, 265 F.3d 601, 613-14 (7th Cir. 2001). In *Mutual Service,* applying Illinois law, the Seventh Circuit held:

> Where a check drawn to the order of a bank is presented to such bank, and the drawer owes no [debt] to the bank, the bank must see that the proceeds are not misapplied, and cannot without justification divert the proceeds to the use of one other than the drawer, and is authorized to pay the proceeds only to persons specified by the drawer. The bank takes a risk in treating the check as being payable to the bearer, and is placed on inquiry as to the authority of the drawer's agent to receive payment. The duty to inquire of the drawer is not satisfied by making inquiry of the bearer. If the bank assumes without investigation that the instructions of the presenter are those of the drawer, it takes a risk. Where the drawer's agent or one representing himself or herself to be such is not in fact authorized, the bank is liable to the drawer for paying the check to such person . . . .

*Id.* at 613. Accordingly, *Mutual Service* reveals that a bank has a duty to inquire as to the authority of a drawer's agent where the drawer or its alleged agent makes a check out to the bank but the drawer owners no debt to the bank. Here, despite being presented with a check made out to it drawn on Belmont's account when Belmont owned no debt to the bank, Banco Popular has not asserted that it made any inquiry of Belmont.

Banco maintains that *Mutual Service* is distinguishable from the present case because the principal in *Mutual Service* had an account with the payee bank, but Belmont did not maintain an account with Banco. The Seventh Circuit's ruling in *Mutual Service*, however, is not dependent

8

on the whether the principal maintains an account with the banking institution charged with inquiry. Indeed, in *Travelers Cas. & Sur. Co. of Am.*, 374 F.3d at 524, the Seventh Circuit reaffirmed its ruling in *Mutual Service*. *Travelers* involved a financial institution, Charles Schwab, that received a check made out to it and drawn on a corporation's account at a different bank, Wells Fargo, by an individual, James Carden. Carden presented the check to Charles Schwab indicating that he wished to open a brokerage account in his name. Charles Schwab opened the account and credited it with the amount of the check from the corporation's Wells Fargo account. Shortly thereafter, the corporation discovered that Carden had forged the check. After Wells Fargo refused to reimburse the corporation for the loss of the forged check, the corporation's insurer paid the corporation for the loss. The insurer then brought suit against Charles Schwab and Wells Fargo as a subrogee of the corporation. The Seventh Circuit again held that a common law duty required Charles Schwab to inquire as to the legitimacy of a check drawn on the account of a corporation that owned no debt to Charles Schwab, even though the corporation did not maintain a bank account or have an independent relationship with Charles Schwab:

> The common law of Illinois . . . requires a bank, if someone tries to deposit a check made out to it in his own account, to exercise due care to make sure that the drawer (the third party) intended the depositor to receive the drawer's money. The danger is great in such a case that the depositor merely found, stole, or forged the check. The risk of his getting away with such fraud is reduced if the bank has a duty to check with the drawer or take other steps to make reasonably sure that the deposit is authorized. The duty is imposed, it should be noted, as a matter of tort law rather than contract law or UCC law (which is mainly contract law); there was no contractual relation between Schwab and [the corporation].

*Travelers Cas. & Sur. Co. of Am.*, 374 F.3d at 526 (internal citations omitted). *See also*

*Travelers Cas. & Sur. Co. of Am. v. Wells Fargo Bank N.A.*, 205 F. Supp. 2d 920, 923 (N.D. Ill.

2002) (noting that a "careful reading of *Mutual Service* indicates that a contractual relationship [between drawer and bank] is not necessary to give rise to this duty"). Accordingly, Banco Popular had a duty to inquire notwithstanding the fact that Belmont held no account with it.

While West Bend has established that Banco Popular had a duty to exercise due care to ensure that Belmont intended Gizynski to receive its money, *Travelers Cas. & Sur. Co. of Am.*, 374 F.3d at 526, West Bend has not presented sufficient evidence to the Court that would require the imposition of a constructive trust against Banco Popular. Instead, the parties' briefing and the documentary evidence submitted to the Court reveal a series of factual disputes that require resolution prior to a ruling on Banco Popular's liability. First, Banco Popular has established that it was aware at the time of the relevant transactions that Belmont was a tenant of the property securing Gizynski's mortgage. Accordingly, there is a question of fact regarding whether Banco Popular's knowledge of the business relationship between Gizynski and Belmont satisfied its duty to inquire. Second, there is a question of fact regarding whether Gizynski was authorized to apply Belmont funds to his mortgage with Banco Popular. While Gizynski testified that he was not authorized to use Belmont funds for his personal debt, he also testified that Jan Gad permitted him to apply Belmont funds to his mortgage with Banco Popular when Belmont owed rent money to Gizynski. For these reasons, a factual question remains as to whether West Bend is entilted to impose a constructive trust on the funds of Banco Popular. *See, e.g., Travelers Cas. & Sur. Co. of Am.*, 374 F.3d at 524 ("Wells Fargo could not be held liable for honoring a forged or otherwise unauthorized check if, in fact, the check was not forged or unauthorized.") The Court accordingly denies West Bend's motion in this regard without prejudice.

**III. Procedural Issues**

West Bend initiated these post-judgment proceedings pursuant to Federal Rule of Civil Procedure 69(a), "which instructs district courts to follow the law of supplementary proceedings of the state in which they sit." *Laborers' Pension Fund v. Pavement Maint., Inc.*, 542 F.3d 189, 191 (7th Cir. 2008); Fed. R. Civ. P. 69(a). Accordingly, the Court proceeds under the Illinois statute governing supplementary proceedings, 735 ILCS 5/2-1402. Pursuant to Illinois law, "if the judgment creditor claims entitlement to the assets of a third party in supplemental proceedings and the third party contests the claim, a trial must be held." *Harmon v. Ladar Corp.*, 200 Ill. App. 3d 79, 83, 557 N.E.2d 1297 (Ill. App. Ct. 1990) (holding that it was error for a trial court to summarily deny a motion for turnover order where the parties did not file motions for summary judgment or stipulate to entry of judgment based on the pleadings, citation examinations, and other stipulated evidence.) Similarly, in *Bloink v. Olson*, 265 Ill. App. 3d 711, 717, 638 N.E.2d 406 (Ill. App. Ct. 1994), the court held that there was no violation of 735 ILCS 5/2-1402 governing supplementary proceedings where both parties were present at a hearing before the court and presented testimony and documentary evidence to the court prior to the court's issuance of a turnover order.

West Bend has accordingly established a right to an evidentiary hearing or trial with regard to these matters. The Court accordingly instructs West Bend and Banco Popular to file a joint status report with the Court on or before May 5, 2010 indicating: (i) whether there is any outstanding discovery to be taken in this matter, and/or (ii) when the parties expect to be prepared for an evidentiary hearing or trial.

## CONCLUSION

For the foregoing reasons, the Court denies West Bend's motion to enforce judgment by imposition of constructive trust on funds paid to Banco Popular.

DATED: April 21, 2010                ENTERED

_____
AMY J. ST. EVE
United States District Court Judge