UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| WEST BEND MUTUAL INSURANCE COMPANY, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No. 09 C 354 |
| BELMONT STATE CORPORATION, JAN GAD, MARK GIZYNSKI, AND KIRK FORBES, | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Before the Court is Plaintiff West Bend Mutual Insurance Company's ("West Bend") motion to enforce judgment, request for imposition of constructive trust, and request for order of turnover of funds paid to MJG Enterprises Corp. ("MJG"). For the following reasons, the Court grants West Bend's motion in part.

## BACKGROUND

West Bend's Amended Complaint in this case alleges claims for, *inter alia*, fraud, conspiracy, RICO claims, and breach of contract arising out of West Bend's issuance of a bond to Defendant Belmont State Corporation ("Belmont") for public projects and Belmont's ensuing failure to pay its subcontractors and suppliers. The subcontractors and suppliers made claims on West Bend's bond, and West Bend paid the claims. On September 17, 2009, the Court entered default judgment against Belmont and the individual defendants, Mark Gizynski ("Gizynski") and Peter Wala, in the amount of $2,150,333.60. (R. 26-1, Default Judgment). The Court vacated the default as to Defendant Wala on April 16, 2010, and dismissed him from the case on

1

August 19, 2010. (R. 74-1, Minute Entry; R. 118-1, Minute Entry.)

With respect to MJG, West Bend served MJG with a third party citation to discover assets on October 28, 2009. Mark Pastucha ("Pastucha"), past owner and president of MJG, appeared on behalf of MJG for a citation deposition. Due to the existence of six checks drawn on Belmont's account at U.S. Bank totaling $58,500.00 and allegedly paid to MJG by deposit into its account at Plaza Bank, West Bend sought to impose a constructive trust against MJG for its uncollected judgment and requested turnover of the funds. The Court denied that motion (R. 78-1, Minute Entry), and West Bend later filed a motion for reconsideration of that ruling. Based on the newly discovered evidence presented in the motion for reconsideration, the Court granted West Bend's motion for reconsideration and scheduled an evidentiary hearing to determine whether to impose a constructive trust on the funds or to impose judgment against MJG. (R. 111-1, Minute Entry).

The Court held a hearing regarding West Bend's motion on August 24, 2010 and August 25, 2010. During the hearing, Pastucha, Thomas Cannon, a prior MJG employee, and Gizynksi testified.

## LEGAL STANDARD

West Bend initiated these post-judgment proceedings pursuant to Federal Rule of Civil Procedure 69(a), "which instructs district courts to follow the law of supplementary proceedings of the state in which they sit." *Laborers' Pension Fund v. Pavement Maint., Inc.*, 542 F.3d 189, 191 (7th Cir. 2008); Fed. R. Civ. P. 69(a). Accordingly, the Court proceeds under the Illinois statute governing supplementary proceedings, 735 ILCS 5/2-1402. The statute permits a judgment creditor "to prosecute supplementary proceedings for the purposes of examining the

2

judgment debtor *or any other person* to discover assets or income of the debtor not exempt from the enforcement of the judgment . . . and of compelling the application of non-exempt assets or income discovered toward the payment of the amount due under the judgment." 735 ILCS 5/2-1402(a) (emphasis added). As one district court in the Northern District of Illinois has explained:

> Under Illinois law, "A district court may . . . summarily compel the application of discovered assets to satisfy a judgment." *Society of Lloyd's v. Estate of McMurray*, 274 F.3d 1133, 1135 (7th Cir. 2001) (citing *Matthews v. Serafin*, 319 Ill. App. 3d 72, 77, 253 Ill. Dec. 201, 744 N.E. 2d 934 (2001); *Mid-American Elevator Co. v. Norcon, Inc.*, 287 Ill. App. 3d 582, 587, 223 Ill. Dec. 202, 679 N.E. 2d 387 (1996)). Illinois procedure under 735 ILCS 5/2-1402 "vests courts with broad powers not only to order discovery, but also to compel application of discovered assets to satisfy a judgment." *Id.* (citing *Kennedy v. Four Boys Labor Servs.*, 279 Ill. App. 3d 361, 216 Ill. Dec. 160, 664 N.E. 2d 1088 (1996)). In addition, proper service on a third party of a citation to discover assets creates a judgment lien that binds all "personal property belonging to the judgment debtor in the possession or control of the third party." 735 ILCS 5/2-1402(m); *Cacok v. Covington*, 111 F.3d 52, 54 (7th Cir. 1997).

*Joseph Stephens & Co. v. Cikanek*, 588 F. Supp. 2d 870, 872 (N.D. Ill. 2008). "The provisions of section 2-1402 are to be liberally construed, and the burden lies with the petitioner to show that the citation respondent possesses assets belonging to the judgment creditor." *Schak v. Blom*, 334 Ill. App. 3d 129, 133, 777 N.E. 2d 635, 639, 267 Ill. Dec. 832, 836 (Ill. App. Ct. 2002).

In addition, "[u]nder Illinois law, 'a constructive trust is imposed to prevent unjust enrichment by imposing a duty on the person receiving [a] benefit to convey the property back to the person from whom it was received.'" *Dexia Credit Local v. Rogan*, 624 F. Supp. 2d 970, 983 (N.D. Ill. 2009) (citing *Martin v. Heinold Commodities, Inc.*, 163 Ill. 2d 33, 56, 643 N.E. 2d 734, 745, 205 Ill. Dec. 443 (1994)). "In order to impose a constructive trust, it is sufficient that a party has received money properly belonging to another under circumstances that, in equity, the party ought not be allowed to retain." *Jackson v. Callan Publ'g, Inc.*, 356 Ill. App. 3d 326, 334,

826 N.E.2d 413, 423, 292 Ill. Dec. 272 (2005). "A trust may be imposed even when the ultimate recipient of the property is an innocent party." *Dexia Credit Local*, 624 F. Supp. 2d at 983.

## ANALYSIS

### I.     Illinois Supreme Court Rule 277(f)

As an initial matter, MJG argues that the citation to discover assets issued against it has expired. Illinois Supreme Court Rule 277(f), however, provides:

> A proceeding under this rule continues until terminated by motion of the judgment creditor, order of the court, or satisfaction of the judgment, but terminates automatically 6 months from the date of (1) the respondent's first personal appearance pursuant to the citation or (2) the respondent's first personal appearance pursuant to subsequent process issued to enforce the citation, whichever is sooner. The court may, however, grant extensions beyond the 6 months, as justice may require. Orders for the payment of money continue in effect notwithstanding the termination of the proceedings until the judgment is satisfied or the court orders otherwise.

Ill. Supreme. Ct. Rule 277(f). Directly contrary to MJG's assertion that Rule 277(f) is not qualified by any discretionary authority, the Seventh Circuit has explained:

> Both state and federal courts construe Rule 277 liberally. We have not found examples of cases where a reviewing court found that a lower court's ruling was invalid as a result of Rule 277(f)'s operation. The text of the rule supports this interpretation. It says that despite the six-month limit, "[t]he court may . . . grant extensions beyond the 6 months, as justice may require." Nothing in the rule requires a party to seek or request an extension from the court in order to avoid termination. Rather, the rule allows the court to "grant extensions . . . as justice may require."

*Laborers' Pension Fund v. Pavement Maint., Inc.*, 542 F.3d 189, 195 (7th Cir. 2008).

West Bend served its citation to discover assets on MJG on October 28, 2009. (R. 32-1, Affidavit of Service.) Without an extension the citation would have expired on April 28, 2010. West Bend filed its motion to reconsider the Court's denial of its motion for imposition of constructive trust on May 10, 2010. In its motion for reconsideration, West Bend demonstrated

4

-- based on newly discovered evidence from Plaza Bank's records of MJG's bank account showing that Belmont deposited funds in MJG's name at Plaza Bank -- that there is good cause to extend the citation to determine whether West Bend is entitled to those funds. The records from Plaza Bank clearly evidence the existence of $58,500 of judgment debtor Belmont's assets in a bank account registered to MJG. West Bend has thus demonstrated good cause to grant an extension beyond six months.

Moreover, the Seventh Circuit has explained that "Illinois courts are unwilling to terminate proceedings under [Rule 277(f)] . . . where the extensions did not lead to harassment of the complaining party." *Pavement Maint., Inc.*, 542 F.3d at 194. Rule 277(f)'s "automatic termination deadline seeks to 'force judgment creditors to move promptly to collect their judgments, so that property does not remain encumbered by liens indefinitely' and to avoid undue harassment of a judgment debtor or a third party." *Windcrest Dev. Co., Inc. v. Giakoumis*, 359 Ill. App. 3d 597, 296 Ill. Dec. 53, 834 N.E. 2d 610, 614 (2005) (quoting *King v. Ionization Intern., Inc.*, 825 F.2d 1180, 1188 (7th Cir. 1987)). West Bend has been diligently seeking to pursue its citation against MJG, and MJG has not demonstrated that West Bend is unduly harassing it in the process. West Bend has thus sufficiently established just cause to extend the citation. *See, e.g, U.S. v. Macchione,* 660 F. Supp. 2d 918, 922-23 (N.D. Ill. 2009) (granting an extension to the extent the citation proceedings lasted beyond Rule 277(f)'s six-month deadline where plaintiff sought limited and tailored relief from citation respondent and no prejudice would result to citation respondent).

## II.  Motion for Judgment, Turnover and Constructive Trust

At issue in West Bend's motion is a series of checks drawn on Belmont's account at U.S. Bank totaling $58,500. When West Bend filed its initial motion for judgment, imposition of a constructive trust, and turnover of funds against MJG, there was great variation in the record regarding the facts relating to the MJG bank account at issue. At the hearing, the Court had the opportunity to evaluate the demeanor and credibility of the witnesses, heard all of the testimony, and had access to all of the relevant documents. *See United States v. Bell*, 464 F.2d 667, 671 (2d Cir. 1972). During the testimony from these witnesses -- including cross examination -- the Court had the opportunity to evaluate their demeanor and credibility. The Court closely assessed the demeanor of each witness, including his body language, tone of voice, facial expressions, mannerisms, and other indicative features. Based on these observations, the relevant documents, and their previous deposition testimony, for example, the Court did not find Gizynski or Pastucha to be credible. Both witnesses repeatedly contradicted earlier statements and gave evasive and partial answers in response to questioning. In contrast, the Court found Cannon to be forthright and credible. Cannon was direct and responsive, for example, and cross-examination did not reveal inconsistencies in his testimony. The Court will address the testimony of each witness in turn.

### A.  Witness Testimony

Gizynski's testimony was less than credible. During his deposition, Gizynski testified that Belmont maintained a bank account at U.S. Bank, and that he was the sole signatory on that account. He also explained at his deposition that he signed a series of checks drawn on Belmont's account at U.S. Bank totaling $58,500 and deposited the checks into MJG's account

at Plaza Bank. Gizynski further claimed at his deposition that he was the only person with control of the MJG account at Plaza Bank. Conversely, at the hearing on the present motion, Gizynski claimed that the MJG bank account at Plaza Bank was his personal account. Gizynski provided no explanation as to why he opened the account in the name of MJG if it was his personal account. To explain the fact that Pastucha signed one of the checks despite Gizynski's testimony that Pastucha had no control over the account, Gizynski explained that he gave Pastucha a blank check. Further demonstrating his lack of credibility, regarding the checks paid into MJG's account, Gizynski testified during his deposition that he did not recall why he would have signed $58,000 in checks from Belmont to MJG in 2008, but conversely testified at the hearing that Jan Gad had asked him to issue the checks and sign them to MJG. He also claimed that after the checks cleared he gave the money to Jan Gad, but could not identify any bank or other records to demonstrate this.

Much of Pastucha's testimony was similarly contradictory and not credible. Pastucha was an employee of Belmont State, and was also the President of MJG beginning in 2006. Pastucha claimed that he purchased MJG from Gizynski in 2006 for $5000. With regard to the initial transfer of MJG to Pastucha in 2006, Pastucha testified that he merely signed a document that an office assistant provided to him and that he was entirely unaware of its contents due to the fact that the document is in English and he does not speak or read English. At his deposition, Pastucha testified that, after he became owner and president or the corporation, MJG never received any money from Belmont and that he did not recall receiving the six checks deposited into the MJG Plaza Bank account in 2008. Pastucha, however, admitted that Gizynski had the ability to sign checks for MJG. Moreover, despite disclaiming knowledge of the Plaza Bank

7

account, Pastucha admitted to personally receiving funds from the MJG account shortly after Gizynksi deposited the Belmont checks into the MJG account. Significantly, during the hearing, Pastucha also claimed, with regard to a $40,000 check made out to Forest Company, that he cashed the check and paid contractors with the funds. He indicated he may have cashed the $40,000 check but, even when pressed by the Court, could not recall one way or the other. Indeed, Pastucha claimed that he could not remember if he left a currency exchange or a bank with $40,000 in cash.

Additionally, both Gizynksi and Pastucha claim that they did not ask Andrew Cholowicz, a certified public accountant, to prepare the financial statements for MJG for the years 2007 through 2009, although West Bend questioned both witnesses regarding these statements. Pastucha did assert, however, that Gizynski was a go-between for MJG and Cholowicz. Pastucha also claimed that the financial statements prepared for MJG by Cholowicz contained inaccuracies and referenced contracts to which MJG was not a party.

Thomas Cannon testified credibly at the hearing. Cannon worked at MJG from March to September 2009 as a project manager/estimator. Gizynski hired him to work at MJG, and from Cannon's perspective, Gizynski ran MJG. He only knew Pastucha as a physical laborer, whom he ran into in the field from time to time, and an employee who worked in the garage at MJG's office location. During his employment at MJG, Cannon came across financial statements for MJG that listed Pastucha as President of MJG. After inquiring of an office employee of MJG, Cannon learned that Pastucha was merely a "front man" for the company. Cannon also had the opportunity during the course of his work to review MJG and Belmont State records that listed the companies' contracts. After viewing these documents, he questioned whether all of the

8

contracts listed on MJG's statements were in fact MJG contracts. He also testified that MJG used fraudulent means to obtain credit and that MJG employees improperly used notary stamps. Ultimately, Cannon left MJG because he believed that the company was engaging in unethical business practices.

B. Findings of Fact and Conclusions of Law

The Court denied the initial motion for imposition of a constructive trust and for turnover of funds because Pastucha, on behalf of MJG, denied any knowledge of the Plaza Bank account purportedly held in the name of MJG or of the six checks totaling $58,000 made out to MJG and allegedly deposited at the MJG Plaza Bank account. Without the benefit of assessing the credibility of the various witnesses, the Court could not rule on West Bend's motion. Having reviewed the documentary evidence, listened to the witnesses' testimony and assessed the credibility of the witnesses, West Bend has more than sufficiently demonstrated that it is entitled to a judgment against MJG.

The documentary evidence from Plaza Bank shows that Gizynski opened the Plaza Bank account on January 17, 2006 in the name of MJG at 6351 W. Montrose Avenue, Chicago, Illinois 606034. The parties have stipulated to the admissibility of certain Plaza Bank records which reflect that the six checks totaling $58,500 identified by West Bend were drawn on an account in the name of Belmont at U.S. Bank and deposited into a bank account at Plaza Bank in the name of MJG. Each of the six checks at issue corresponds with deposits into the Plaza Bank account: (i) Check No. 7045, dated September 6, 2008, in the amount of $3,500; (ii) Check No. 7132, dated September 23, 2008, in the amount of $3,450; (iii) Check No. 7172, dated September 30, 2008, in the amount of $4,700; (iv) Check No. 7220, dated October 10, 2008, in

9

the amount of $9,725; (v) Check No. 7221, dated October 11, 2008, in the amount of $9,725; and (vi) Check No. 7228, dated October 14, 2008, in the amount of $27,350. The parties also stipulated that the documentation from Plaza Bank does not contain a deposit account agreement bearing the signature of Pastucha on behalf of MJG and, instead, Gizynski signed the deposit agreement with Plaza Bank on January 17, 2006. The parties further stipulated that there are no written records at Plaza Bank authorizing Pastucha to receive information relating to the account.

The Plaza Bank records also reveal that while Gizynski physically opened the account for MJG using Pastucha's documentation, Plaza Bank opened the account based on documentation of Pastucha's personal information. While Pastucha denies knowledge of these documents, it is undisputed that Gizynski, as an agent of the judgment debtor Belmont, drew six checks on Belmont's bank account and deposited them into MJG's Plaza Bank account between September 6, 2008 and October 16, 2008. Significantly, checks drawn on the Plaza Bank account and signed by Gizynski on behalf of MJG were issued payable to Pastucha. On their face, the checks reflect that Gizynski signed the checks drawn on an MJG account. Pastucha, although he does not read English, was able to identify the term "MJG" on a check during the hearing before the Court. Based on Pastucha's position as President of MJG, his testimony that Gizynksi had the ability to sign MJG checks, his receipt of funds drawn on the MJG bank account, and Cannon's testimony the Pastucha was merely a "front-man" for MJG, the Court finds that Pastucha and MJG knowingly permitted Gizynski to control MJG's bank account.

Despite the uncontroverted evidence that the MJG bank account held $58,000 of Belmont's funds in 2008, MJG makes two primary arguments in opposition to West Bend's request for judgment, imposition of constructive trust, and turnover. First, in its post-hearing

brief, MJG argues that because it was not in possession of any funds during the pendency of the citation, it would be improper to impose a trust or judgment against Pastucha or MJG. As one Illinois court has explained, however, is it appropriate to enter judgment against a citation respondent during supplementary proceedings even though the respondent came into possession of the assets prior to entry of judgment against the judgment debtor:

> We hold section 2-1402 of the Code and Supreme Court Rule 277 do not require a finding of fraudulent intent on behalf of the judgment debtor in transferring assets to a third party in order for a court to force that third party to deliver up the assets to the judgment creditor. It is enough that the judgment debtor has the right to recover the assets from the third party. Accordingly, Bentley is not barred in a supplementary action against the Shipleys merely because the Shipleys came into possession of the assets before Bentley obtained the judgment against Shipley Enterprises. *See Shatkin Investment Corp. v. Connelly* (1984), 128 Ill. App. 3d 518, 524, 83 Ill. Dec. 810, 814, 470 N.E. 2d 1230, 1234 (judgment creditor is not limited to period after citation when questioning third party about location of judgment debtor's assets).

*Bentley v. Glenn Shipley Enters., Inc.*, 248 Ill. App. 3d 647, 651, 619 N.E. 2d 816, 819-20, 189 Ill. Dec. 115, 118-19 (Ill. App. Ct. 1993). Second, MJG argues that it is not currently in possession of any funds. Rule 277, however, applies to third parties that the judgment creditor "believes has property of *or is indebted to the judgment debtor*." Ill. Supreme. Ct. Rule 277(a) (emphasis added). *Bentley*, 248 Ill. App. 3d 518, is also instructive in this regard. In that case, the third party citation respondents contended that they did not possess any corporate assets of the judgment debtor corporation because they spent the funds at issue on personal debts and that the funds were never in their hands. The court, however, explained:

> The Shipleys contend they did not possess any corporate assets at the time of the citation since the corporation's money spent on their personal debts was never in their hands. The Shipleys rely exclusively on *Lange v. Misch*, 232 Ill. App. 3d 1077, 174 Ill. Dec. 215, 598 N.E.2d 412 (Ill. App. Ct. 1992), where this court found the trial court erred in piercing the corporate veil in a supplementary proceeding and finding a controlling stockholder liable for the debt of a corporate judgment debtor

11

where there was no evidence the controlling stockholder possessed any assets of the judgment debtor. In *Lange*, however, the record was devoid of any evidence regarding the transfer of any corporate assets to, or for the benefit of, the third party. Here, the evidence showed that "Glenn Shipley and Shirley Shipley applied $18,243.48 in money belonging to Glenn Shipley Enterprises, Inc., for their personal benefit."

The fact the money went directly to the Shipleys' creditors does not necessarily prevent judgment against the Shipleys. The court in *Froehlich* (93 Ill. App. 3d at 186, 48 Ill. Dec. at 617-18, 416 N.E. 2d at 1139-40) refused to apply assets held by a third party to satisfy a judgment against a corporation because the plaintiff failed to show the third party "had any assets of the corporation in his possession or control or that he was indebted to the corporation." (Emphasis added.) Here, although the Shipleys never had physical possession of the money because it went to their creditors, the evidence indicated they were indebted to the corporation for the payments made on their behalf and for their benefit to their creditors.

*Bentley*, 248 Ill. App. 3d 647, 652, 619 N.E.2d 816, 820, 189 Ill. Dec. 115, 119 (Ill. App. Ct. 1993). Thus, West Bend may recover from MJG if it has shown that MJG is indebted to Belmont.

In its post-hearing briefing, West Bend argues that the nature of MJG's indebtedness to Belmont arises under two theories: (i) conversion, and (ii) assumpsit for money had and received. As an initial matter, West Bend has not shown that conversion is an appropriate means by which it can recover the funds at issue. Under Illinois law, conversion is "any unauthorized act, which deprives a man of his property permanently or for an indefinite time." *Bill Marek's The Competitive Edge, Inc. v. Mickelson Group, Inc.*, 346 Ill. App. 3d 996, 1003, 806 N.E. 2d 280, 285-86, 282 Ill. Dec. 305, 310-11 (Ill. App. Ct. 2004) (internal citations omitted). To succeed on a conversion claim, a plaintiff must show: "(1) the defendant's unauthorized and wrongful assumption of control, dominion, or ownership over the plaintiff's personal property; (2) the plaintiff's right in the property; (3) the plaintiff's right to immediate possession of the property, absolutely and unconditionally; and (4) the plaintiff's demand for possession of the

12

property." *Id.* West Bend, however, has presented no evidence that MJG wrongfully deprived Belmont of the $58,000. Indeed, in support for its claim that MJG converted the funds, West Bend merely relies on evidence demonstrating that MJG claims no right or entitlement to the funds. While the evidence supports this fact, West Bend has pointed to no evidence to show "unauthorized or wrongful assumption" by MJG of Belmont's funds. Instead, the evidence reflects that Gizynski, on behalf of Belmont, voluntarily placed the Belmont funds into MJG's bank account.

West Bend has shown, however, that Belmont is entitled to the funds pursuant to the Illinois common law theory of money had and received. "An action for money had and received is maintainable where defendant has received money which in equity and good conscience belongs to the plaintiff." *Kaiser v. Fleming*, 315 Ill. App. 3d 921, 925, 735 N.E. 2d 144, 147, 248 Ill. Dec. 824, 827 (Ill. App. Ct. 2000) (citing *Maloney v. Pihera*, 215 Ill. App. 3d 30, 45, 158 Ill. Dec. 194, 573 N.E. 2d 1379 (Ill. App. Ct. 1991)). As the court in *Beatrice Foods Co. v. Gallagher* explained:

> At common law an action of assumpsit, under the common counts for money had and received, is an appropriate remedy to enforce the equitable obligation arising from the receipt of money by one person which belongs to another and which in equity and justice should be returned. The action is in form ex contractu. The right to recover is governed by principles of equity although the action is at law. It is maintainable in all cases where one person has received money or its equivalent under such circumstances that in equity and good conscience he ought not to retain it and which ex aequo et bono belongs to another. The State here voluntarily paid to the defendant and the defendant voluntarily received $12,262.77 which under the law and the facts and circumstances pleaded belonged to the plaintiff. An action for money had and received to the use of the plaintiff is maintainable to recover the money, either under the theory of an implied contract or under the theory of a quasi contractual obligation.

197 N.E.2d 274, 283 -284 (Ill. App. Ct. 1964). Similarly, in the present case, the evidence

13

establishes that Gizynski, as president of Belmont, voluntarily deposited $58,000 into MJG's Plaza Bank account. MJG, however, denies any knowledge of the fund or ownership of the assets. It is difficult to ascertain the exact nature of the relationship between Gizynksi and Pastucha on the one hand, and Belmont and MJG on the other, due to the evasive and incomplete testimony presented by Gizynski and Pastucha at the hearing. West Bend has nevertheless established that Gizynski controlled both Belmont and, to a large extent, MJG. It is also clear that, while he was President of MJG in name, Pastucha knowingly permitted Gizynksi to control the assets and business of MJG. While Pastucha's denial of knowledge of the bank account itself is not credible, the Court need not reach this issue as there is no evidence in the record from any party to even suggest that MJG has any right to the funds. MJG expressly disavows an interest in the $58,000 of Belmont funds that Gizynksi deposited into MJG's bank account. Finally, Gizynski's testimony that he gave the $58,000 to Jan Gad is not credible and does not detract from West Bend's motion. The Plaza Bank records do not reflect any payments to Jan Gad. There is no evidence in the record to support this claim, or to support a claim that MJG ever returned the funds to Belmont. Belmont has always had a right to the funds and MJG has made no competing claim to the funds. Under a theory of money had and received, the judgment debtor Belmont is therefore entitled to a judgment in the amount of $58,000. *See Kaiser*, 315 Ill. App. 3d at 925, 735 N.E. 2d at 147.

As stated above, the Court has analyzed and weighed the testimony and other evidence adduced during the hearing and briefing on MJG's motions, as well as the credibility and demeanor of testifying witnesses. Based on its evaluation of the totality of the circumstances,

the Court finds that MJG has demonstrated that judgment against MJG in the amount of $58,500 is warranted.

### B. Request for Constructive Trust

In addition to requesting judgment against MJG, West Bend also requests the imposition of a constructive trust with regard to the assets. Imposition of a constructive trust, however, is not proper because West Bend has been unable to locate the funds at issue. "It is well established that '[w]hen a person's property has been wrongfully appropriated and converted into a different form, "equity impresses a constructive trust upon the new form or species of property, not only while it is in the hands of the original wrong-doer, but as long as it can be followed and identified in whosesoever hands it may come, except those of a bona fide purchaser for value.'" *Jackson v. Callan Pub., Inc.*, 356 Ill. App. 3d 326, 334, 826 N.E. 2d 413, 423, 292 Ill. Dec. 272, 282 (Ill. App. Ct. 2005) (citing *Sadacca v. Monhart*, 128 Ill. App. 3d 250, 256, 83 Ill. Dec. 463, 470 N.E. 2d 589, 593-94 (1984)).

It is undisputed that West Bend has been unable to locate the $58,000. Instead, West Bend points to two cases which it claims support its contention that a trust is warranted even where the funds are not specifically identifiable. Both cases are inapposite. *In re Preston*, 76 B.R. 654, 657 (Bankr. C.D. Ill. 1987), merely stands for the proposition that a court may impose a constructive trust when it is able to "trace" the funds that are the subject of the judgment. In that case, the court specifically identified and traced the ultimate location of the funds on which it imposed a constructive trust. Similarly, in *In re Commissioner of Banks and Real Estate*, 327 Ill. App. 3d 441, 480, 764 N.E. 2d 66, 100, 261 Ill. Dec. 775, 809 (Ill. App. Ct. 2001), the court held that, "[a]n individual with an interest in a trust fund is accorded priority over the general

15

creditors of the wrongdoer who has commingled the funds so long as the commingled fund remains intact and the individual is able to trace his funds to the commingled fund." Here, West Bend has made no showing that it can trace the funds at issue. Accordingly, the imposition of a constructive trust is not warranted. *Jackson*, 356 Ill. App. at 334, 826 N.E. 2d at 423.[1]

### C. Forest Company

Both MJG and West Bend raise arguments regarding Forest Company. The facts regarding Forest Company are limited. A bill of transfer dated January 12, 2010 indicates that MJG transferred all of its assets to Forest Company during the pendency of the citation proceeding against MJG. The bill of transfer reflects that Pastucha was both the buyer and the seller in that transaction and that he is the President of both MJG and Forest Company. Pastucha claimed that he did not know what assets MJG had when he transferred it to Forest Company, but that there were likely no accounts receivables. He also asserted that the company had no cash at the time of the transfer.

West Bend requests judgment, imposition of constructive trust, and an order of turnover against Forest Company. In its post-hearing brief, MJG asserts that "[t]he Court has jurisdiction over Forest [Company] and to the extent that Forest Company acquired the assets and liabilities of MJG . . . the Court can and must enter judgment in the amount of $58,000 against Forest Company as the successor of MJG, as well as Mark Pastucha for having participated in the transfer of assets in violation of the citation's prohibition on transfer." (R. 121, West Bend's

---

[1] Similarly, because MJG has not identified any specific MJG funds, the Court cannot order turnover of funds unless and until those funds are identified.

Final Memorandum and Argument in Support of a Motion for Turnover and For Other Relief.) In addition, West Bend asserts that, based on testimony that Forest Company owes Mark Gizynski rent, the Court should order Forest Company to pay $12,000 to West Bend. These requests, however, are without legal support and are beyond the scope of the limited issues presented to the Court in West Bend' initial motion. As the Court instructed the parties both prior to and during the hearing on West Bend's motion, the limited issue before the Court is whether the Court may enter a $58,000 judgment against MJG or order it to turnover $58,000 to West Bend. West Bend has issued a citation to discover assets to Forest Company and any actions against Forest Company should be addressed through that separate proceeding.

MJG's argument with respect to Forest Company is also without merit. MJG contends that the Court should deny West Bend's motion because MJG has no assets as a result of the transfer to Forest Company. Although Pastucha transferred the assets and liabilities of MJG to Forest Company on January 12, 2010, this transaction does not permit MJG to avoid the effect of the citation. "[W]here a third party has transferred the assets of the corporate debtor for consideration, with full knowledge of the existence of an outstanding claim against the corporation, then the judgment creditor may properly treat the proceeds from the sale of the assets as property of the corporate debtor, which is recoverable pursuant to section 2-1402 of the Code of Civil Procedure (735 ILCS 5/2-1402)." *Kennedy v. Four Boys Labor Service, Inc.*, 279 Ill. App. 3d 361, 367, 664 N.E. 2d 1088, 1091-92, 216 Ill. Dec. 160, 163-64 (Ill. App. Ct. 1996). "To hold otherwise would allow a third party to obtain assets of a judgment debtor and then sell those assets to another third party, thereby precluding recovery." *Id.* Thus, any proceeds that MJG has from the transaction with respect to Forest Company are subject to the judgment

17

against MJG.

## CONCLUSION

For the foregoing reasons, the Court grants West Bend's motion in part and enters judgment against MJG in the amount of $58,000.

DATED: September 9, 2010

ENTERED:

AMY J. STUEVE
United States District Court Judge