**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| WEST BEND MUTUAL INSURANCE COMPANY, | ) ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 09 C 354 |
| | ) | |
| BELMONT STATE CORPORATION, JAN GAD, MARK GIZYNSKI, AND KIRK FORBES, | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

In its motion and supporting exhibits, Plaintiff West Bend Insurance Company ("West Bend") states that during a July 27, 2010 deposition of third party citation respondent Banco Popular North America ("Banco Popular"), it discovered that Defendant Mark Gizynski ("Gizynski") – who is subject to a citation in this action and against whom a default judgment has been entered – made undisclosed cash payments on his mortgage during the pendency of the citation proceeding. In its motion, West Bend seeks: (i) an order for Gizynski to show cause why he should not be held in contempt for transferring his assets during a citation proceeding, (ii) an injunction against Gizynski to stop him from making further transfers of his assets, (iii) an order requiring Gizynski to account for all cash he has received or possessed since the inception of the citation proceeding and an order to turnover these funds to West Bend, (iv) an order requiring Banco Popular to respond to the motion,[1] and (v) judgment against Banco Popular in

---

[1] Banco Popular responded to West Bend's motion on October 15, 2010. (R. 132, Banco Popular North America's Resp. to West Bend's Mot. for Judgment & Turnover Order). The Court therefore denies that aspect of Plaintiff's motion as moot.

the amount of $47,720.00, the sum total of Gizynski's cash payments between January-July 2010.

For the reasons below, the Court denies West Bend's motion for judgment and turnover of the $47,720.00, but orders Banco Popular to pay the costs associated with this motion, as permitted under 735 ILCS § 5/2-1402(h). Gizynski shall be jointly and severally liable for the payment of those costs. West Bend shall submit its fee petition on or before January 5, 2011. In the event that it receives any future deposits from Gizynski, the Court also orders Banco Popular to notify West Bend of the deposit in writing, within no more than seven business days from the date of deposit, for the duration of this enforcement proceeding or until the Court otherwise orders. The notice shall state the date of deposit, the amount deposited, and the method (i.e. cash or check) of the deposit, and it shall include a certified copy of the deposit slip.[2] With regard to the remainder of West Bend's motion, the Court enjoins Gizynski from making further transfers of his non-exempt assets, orders Gizynski to provide a cash accounting to West Bend by January 7, 2011, and orders Gizynski to file a submission with the Court describing any exemptions he seeks to claim on or before January 7, 2011.

## BACKGROUND

The Amended Complaint in this action alleges claims for, *inter alia*, fraud, conspiracy, and breach of contract arising out of West Bend's issuance of a bond to Defendant Belmont State Corporation ("Belmont State") for public projects and Belmont State's ensuing failure to pay its subcontractors and suppliers. The Court entered default judgment against Belmont State and the

---

[2] Banco Popular provided this information to West Bend for Gizynski's January-July 2010 cash payments. (R. 116-4, Supplemental Document Production By Banco Popular.)

individually named defendants, including Gizynski, in the amount of $2,150,333.60 on September 17, 2009. (R. 26-1, Default Judgment.)

On October 28, 2009, West Bend served a citation to discover assets to Gizynski (the "Gizynski Citation"). On October 29, 2009, West Bend served Banco Popular with a third party citation to discover assets (the "Banco Citation").[3] The citations, issued pursuant to 735 ILCS 5/2-1402, prohibit Gizynski and Banco Popular from:

> making or allowing any transfer or other disposition of, or interfering with, any property not exempt from execution or garnishment belonging to [Gizynski] or to which [Gizynski] may be entitled or which may be acquired by or become due to [Gizynski] and from paying over or otherwise disposing of any money not so exempt, which is due or becomes due to [Gizynski], until further order of court or termination of the proceedings.

(R. 29-1, Gizynski Citation; R. 33-1, Banco Citation.)

In connection with the citation proceedings, West Bend deposed Gizynski on January 7, 2010. There, Gizynski testified that he understood the restrictions imposed upon him by the citation. While discussing how Gizynski would handle the monthly rent payments he collected from tenants at 4944 W. Belmont – the property subject to the Mortgage with Banco Popular – West Bend's counsel asked Gizynski explicitly, "Do you understand that under the citation, you are prohibited from transferring any of the assets you receive; is that correct?" Gizynski replied, "Yes." (R. 116-2, Gizynski Deposition Excerpt.) Nevertheless, on July 27, 2010, while deposing a representative of third party citation respondent Banco Popular, West Bend learned

---

[3] Gizynski obtained a mortgage from Banco Popular on June 25, 2004 ("Mortgage"), in the amount of $975,000.00, secured by property at 4938-44 West Belmont, Chicago, Illinois, 60641. *See* R. 132-2. On July 5, 2009 – the maturity date of the Mortgage – Gizynski and Banco Popular entered into a Business Loan Agreement that renewed and modified the promissary note from the Mortgage. That Business Loan Agreement will mature on July 5, 2014. Earlier payments Gizynski made to Banco Popular on the Mortgage are the subject of a separate motion, *see* R. 125; the Court will not address them here.

that Gizynski had made mortgage payments to Banco Popular in 2010.  West Bend promptly conducted further discovery and discovered that Gizynski had made six cash payments to Banco Popular between January-July 2010, totaling $47,720.00.  Gizynski made the first of those payments just days after his deposition.  At no time prior to July 27, 2010 did Banco Popular notify West Bend, or the Court, that it had received cash payments from Gizynski.  Instead, Banco Popular accepted the deposits and applied the cash payments to the Mortgage.

West Bend and Banco Popular deposed Gizynski a second time, on September 27, 2010.  At that deposition, Gizynski admitted that he had made cash payments, in person, at three separate Banco Popular locations after being served with the Gizynski Citation.[4]  (R. 132-3, Gizynski Deposition II, at 31-33.)  Gizynski testified that he made the payments using rent he had collected from the tenants at 4944 W. Belmont.  When pressed to identify whom he collected the rent from, when he collected the rent, or the sums that he collected, however, Gizynski gave conflicting and confused testimony, as illustrated in the following exchange:

> Q:    Do you have any records to show from whom you collected rent that you used to pay your mortgage payment?
>
> A:    I don't do that.
>
> Q:    You have no written records, is that what you're saying?  You have no written records of who paid you rent?
>
> A:    So few tenants.  I remember everything.
>
> Q:    You remember everything, is that what you're saying?
>
> A:    I remember how much they paid me.

---

[4]  Although this was not discussed at the September 27, 2010 deposition, the Court notes that Banco Popular had been served with a third party citation to discover assets before Gizynski made the cash payments.

Q:      In January of 2010, who paid you rent?

A:      That's eight months ago.  I don't remember right now.

Q:      A moment ago you said you remembered everything.

A:      Only at the time they're paying.

(*Id*. at 33-34.)  Gizynski also testified that he used his tenants' rental payments for the month of August 2010 to pay for his own physical therapy sessions.  (*Id*. at 35-36.)

West Bend filed the present motion against Gizynski and Banco Popular, asserting that both parties violated the terms of their respective citations.  In its motion, West Bend asks the Court to issue a rule to show cause as to why Gizynski should not be held in contempt for violating the asset transfer prohibition in the citation.  West Bend also asks the Court to: (1) order Gizynski to provide West Bend with a cash accounting "for all cash he has received or [ ] possessed," or currently possesses; (2) order Gizynski to turn over those funds; and (3) enjoin Gizynski from making further transfers of his non-exempt assets.  West Bend asks the Court for a judgment and turnover order against Banco Popular in the amount of $47,720.00 – the money Gizynski deposited between January-July 2010.  West Bend contends it is entitled to these funds by virtue of its judgment lien on Gizynski's non-exempt assets, which was perfected when West Bend served the Gizynski Citation on October 28, 2009.

Gizynski and Banco Popular oppose West Bend's motion on several grounds.  Although the parties filed individual responses,[5] both parties argue that their respective citation proceedings have terminated, and that West Bend's motion is thus untimely.  Both parties also

---

[5] In its response, Banco Popular explicitly states that it takes no position on the aspects of West Bend's motion that involve Gizynski.  (R. 132, Banco Popular Resp., at 2.)

assert, albeit with certain nuanced differences, that even if the citation proceedings have not terminated, West Bend's judgment lien on Gizynski's non-exempt assets is subordinate to Banco Popular's lien on the specific rental payments at issue in this motion, because Banco Popular's lien on the payments was perfected in July 2004 when Banco Popular and Gizynski entered into an Assignment of Rents. The parties argue that Banco Popular's earlier-filed lien trumps West Bend's judgment lien and that, as a result, Banco Popular has the priority right to those funds. Finally, Gizynski makes several arguments in response to West Bend's request for a rule to show cause, and asks the Court to conduct a hearing before issuing an injunction so that he may "claim his exemptions and an allowance for living and legal expenses." (R. 127, Gizynski Resp., at 5.)

## ANALYSIS

West Bend initiated these post-judgment proceedings pursuant to Federal Rule of Civil Procedure 69(a), "which instructs district courts to follow the law of supplementary proceedings of the state in which they sit." *Laborers' Pension Fund v. Pavement Maint., Inc.*, 542 F.3d 189, 191 (7th Cir. 2008); Fed. R. Civ. P. 69(a). Accordingly, the Court proceeds under the Illinois statute governing supplementary proceedings, 735 ILCS § 5/2-1402. That statute permits a judgment creditor "to prosecute supplementary proceedings for the purposes of examining the judgment debtor *or any other person* to discover assets or income of the debtor not exempt from the enforcement of the judgment . . . and of compelling the application of non-exempt assets or income discovered toward the payment of the amount due under the judgment." 735 ILCS § 5/2-1402(a) (emphasis added). Put another way, supplementary proceedings under § 2-1402 are designed to assist a judgment creditor in discovering assets of the judgment debtor in order to satisfy an unpaid judgment. *Pyshos v. Heart-Land Development Co.*, 258 Ill. App. 3d 618,

622-23, 196 Ill. Dec. 889, 630 N.E.2d 1054 (1994). Section 2-1402 authorizes the judgment

creditor to examine a third party, and upon a showing that the third party is holding assets

belonging to the judgment debtor, empowers the court to summarily compel the application of

discovered assets or income to the satisfaction of the judgment, as long as the judgment debtor

would have the right to recover such assets from the third party. *Id*. at 623; *Bentley v. Glenn*

*Shipley Enterprises, Inc.*, 248 Ill. App. 3d 647, 651, 189 Ill. Dec. 115, 619 N.E.2d 816 (1993).

"Section 2-1402 is to be construed liberally, not only providing for the discovery of a

debtor's assets and income, but also vesting the courts with 'broad powers to compel the

application of discovered assets or income to satisfy a judgment.'" *City of Chicago v. Air Auto*

*Leasing Co.*, 297 Ill. App. 3d 873, 878, 232 Ill. Dec. 46, 697 N.E.2d 788, 791 (1998) (citing

*Kennedy v. Four Boys Labor Service, Inc.*, 279 Ill. App. 3d 361, 367, 216 Ill. Dec. 160, 664 N.E.

2d 1088 (1996)); accord *Society of Lloyd's v. Estate of McMurray*, 274 F.3d 1133, 1135 (7th Cir.

2001). The "court at any time may . . . control and direct the proceeding to the end that the

rights and interests of all parties and persons involved may be protected and harassment

avoided." Ill. Sup. Ct. R. 277(e). Because citation proceedings "are meant to be swift, cheap,

[and] informal," Rule 277(e) leaves "the procedure to be followed in such proceedings largely to

the judge's discretion." *Resolution Trust Corp. v. Ruggiero*, 994 F.2d 1221, 1226 (7th Cir.

1993).

## I.      Illinois Supreme Court Rule 277(f)

As an initial matter, Gizynski and Banco Popular both argue that the citations to discover

assets issued against them have expired as a matter of law. Illinois Supreme Court Rule 277(f)

provides:

A proceeding under this rule continues until terminated by motion of the judgment creditor, order of the court, or satisfaction of the judgment, but terminates automatically 6 months from the date of (1) the respondent's first personal appearance pursuant to the citation or (2) the respondent's first personal appearance pursuant to subsequent process issued to enforce the citation, whichever is sooner. The court may, however, grant extensions beyond the 6 months, as justice may require. Orders for the payment of money continue in effect notwithstanding the termination of the proceedings until the judgment is satisfied or the court orders otherwise.

### A.    Banco Citation

Banco Popular contends that West Bend's motion is untimely because the Banco Citation automatically expired on August 25, 2010.  West Bend issued the Banco Citation on October 22, 2009, and it was served on October 29, 2009.  Banco Popular states that it first appeared for this matter on February 25, 2010.  Under Rule 277(f), and absent extension by the Court, Banco Popular contends that the Banco Citation would have expired on August 25, 2010.  Banco Popular further alleges that the Court made no such extensions.  Banco Popular's argument fails for several reasons.

First, Banco Popular's contention is factually incorrect.  The Court did, in fact, explicitly extend the citation proceeding.  In a ruling on an earlier component of the citation proceeding against Banco Popular – the component which revealed the undisclosed asset transfers that are the subject of the present motion – the Court ruled that "the citation proceeding against Banco Popular remains open and West Bend is not required to file a further motion prior to proceeding with discovery."  (R. 88, 5/7/10 Order, at 3.)  Second, even if the Court had not made any extensions pursuant to Rule 277(f), the motion would have been timely because West Bend filed the underlying motion on August 16, 2010 – nine days before the six-month expiration date.

Finally, even if the Court had not explicitly extended the citation proceeding in its May 7,

2010 ruling, the language of Rule 277(f) makes clear that extensions may be granted "as justice may require." Ill. Sup. Ct. R. 277(f). The Seventh Circuit has explained:

> Both state and federal courts construe Rule 277 liberally. We have not found examples of cases where a reviewing court found that a lower court's ruling was invalid as a result of Rule 277(f)'s operation. The text of the rule supports this interpretation. It says that despite the six-month limit, "[t]he court may ... grant extensions beyond the 6 months, as justice may require." Nothing in the rule requires a party to seek or request an extension from the court in order to avoid termination. Rather, the rule allows the court to "grant extensions . . . as justice may require."

*Laborers' Pension Fund*, 542 F.3d at 194-95; *see generally Kirchheimer Brothers Co. v. Jewelry Mine, Ltd.*, 100 Ill. App. 3d 360, 363, 426 N.E.2d 1110, 55 Ill. Dec. 785 (1981). As several courts have stated, Rule 277(f)'s so-called "automatic termination deadline" seeks to "'force judgment creditors to move promptly to collect their judgments, so that property does not remain encumbered by liens indefinitely' and to avoid undue harassment of a judgment debtor or a third party." *United States v. Macchione*, 660 F. Supp. 2d 918, 922 (N.D. Ill. 2009) (citing *Windcrest Development Co., Inc. v. Giakoumis*, 359 Ill. App. 3d 597, 834 N.E.2d 610, 296 Ill. Dec. 53 (2005) (quoting *King v. Ionization Intern., Inc.*, 825 F.2d 1180, 1188 (7th Cir. 1987))). Neither of those concerns are implicated here. West Bend initiated supplementary proceedings against third party citation respondent Banco Popular to determine whether Banco Popular had received, or presently possesses, assets that should be used to satisfy West Bend's judgment against Gizynski. West Bend discovered assets that it believes should be turned over to satisfy the Gizynski judgment, and is litigating those issues. Banco Popular does not raise concerns about an "indefinite" lien or "undue harassment," and the Court has seen no evidence to suggest this. Therefore, even if West Bend's motion was untimely, an extension would be warranted under the circumstances of this case.

For absolute clarity, and so as to avoid unnecessarily litigating this issue in future proceedings, the Banco Citation filed herein by West Bend shall remain in full force and effect pursuant to Supreme Court Rule 277(f), in the interest of justice, for the duration of the litigation of the underlying motion, as well as for the duration of West Bend's Renewed Motion to Enforce its Judgment Against Funds Paid to Banco Popular (R. 125). If Banco Popular wishes to terminate its third party citation proceeding earlier, it must file a motion with the Court.

### B.      Gizynski Citation

Gizynski also argues that the citation proceedings have automatically terminated, albeit for different reasons. Gizynski submits a minute entry from May 13, 2010 in which the Court explicitly continued the Gizynski Citation to July 1, 2010, the date of the parties' next status hearing. (R. 127-1, 5/13/10 Minute Entry.) The July 1, 2010 status hearing was reset by the Court three times in a series of minute entries, none of which contained language explicitly continuing the Gizynski Citation. (R. 127-2, 6/29/10 Minute Entry, 7/28/10 Minute Entry, 7/29/10 Minute Entry.) The Court reset the status hearings in order to permit the parties to finish briefing the issues before the Court and to allow the Court to complete its rulings. Gizynski points to the "omitted" language in these minute entries as evidence that the Gizynski Citation expired on July 1, 2010. The Court acknowledges that the minute entries did not use explicit language continuing the Gizynski Citation, but finds that Gizynski is not prejudiced by those omissions, especially in light of the reasons for the continuances. Gizynski has been actively involved in these supplementary proceedings since July 1, 2010 – his counsel has appeared in court at a number of status and motion hearings, and Gizynski himself was deposed for a second time on September 27, 2010 in connection with this motion.

Gizynski is one of two judgment debtors in this case. West Bend is pursuing supplementary proceedings under Fed. R. Civ. P. 69(a) to collect on that judgment. Although Gizynski intimates that West Bend's citation to discover assets constitutes harassment and is improperly motivated,[6] the Court has seen no evidence of harassment and finds otherwise. For the reasons stated in its discussion *supra* regarding the Banco Citation, the Court finds that justice requires an extension of the Gizynski Citation. Therefore, the Gizynski Citation filed herein by West Bend shall remain in full force and effect pursuant to Supreme Court Rule 277(f) for the duration of the litigation of the remaining motions currently pending before the Court in connection with West Bend's post-judgment proceeding. To the extent Gizynski wishes to terminate the Gizynski Citation at an earlier date, he must file a motion with the Court.

## II.     West Bend's Request For Judgment & Turnover

Under § 2-1402(m), proper service of a citation to discover assets creates a lien that "binds nonexempt personal property, including money, choses in action, and effects of the judgment debtor . . ." 735 ILCS § 5/2-1402(m). When the citation has been served on a third party, that lien reaches "all personal property belonging to the judgment debtor in the possession or control of the third party or which thereafter may be acquired or come due the judgment debtor . . ." 735 ILCS § 5/2-1402(m)(2). The lien is perfected on the date the citation is served. *Cacok v. Covington Electric Co., Inc.*, 111 F.3d 52, 53 (7th Cir. 1997).

West Bend contends that under Illinois law, and pursuant to § 2-1402(m), it is entitled to the $47,720.00 in cash that Gizynski deposited at Banco Popular. Banco Popular disagrees, and

---

[6]  In Gizynski's response to West Bend's motion, Gizynski claims that "[a]ll West Bend shows is that it wants to punish Gizynski, not collect."  (R. 127, Gizynski Resp., at 4.)

makes two primary arguments.  First, Banco Popular argues that the third party citation proceeding must discontinue because West Bend has failed to establish that Banco Popular possessed, or possesses, any of Gizynski's assets – a precondition to engaging in a supplementary proceeding.  *See Schak v. Blom*, 334 Ill. App. 3d 129, 133, 777 N.E.2d 635, 267 Ill. Dec. 832 (2002).  Second, Banco Popular argues that even if West Bend demonstrates that Banco Popular possessed or possesses Gizynski's assets, Banco Popular's perfected security interest in the rents Gizynski deposited at Banco Popular  is superior to West Bend's judgment lien on those monies.[7]  The Court addresses these arguments in turn.

> **A.      West Bend Has Established that Banco Popular Possesses Assets Belonging to Gizynski**

"Before a judgment creditor may proceed against a third party who is not the judgment debtor, the record must contain some evidence that the third party possesses assets of the judgment debtor."  *Schak*, 334 Ill. App. 3d at 133.  "[T]he burden lies with the petitioner to show that the citation respondent possesses assets belonging to the judgment creditor."  *Id*.  The Court has no authority to enter any judgment against that third party in a supplementary proceeding if the third party possesses no assets of the judgment debtor.  *Id*.

West Bend has submitted evidence that Gizynski made six cash deposits to Banco Popular between January-July 2010, totaling $47,720.00.  Neither Defendant disputes this evidence, and Banco Popular admits receiving these cash deposits.  Banco Popular argues, however, that the cash deposits were not "assets of the judgment debtor" because Banco Popular

---

[7]    None of the parties dispute that the cash deposits originated from tenants' rental payments at 4944 W. Belmont, Chicago, Illinois.

maintained a perfected lien on the source of the deposits – namely, the rental payments.[8]  This

argument is not persuasive.

"Illinois adheres to the general rule that rents are an incident of possession. . . . Thus, a

mortgagor . . . is entitled to any rents generated from the property as long as he retains

possession, without having to account for them to the mortgagee."  *In the Matter of Wheaton*

*Oaks Office Partners Ltd. Partnership*, 27 F.3d 1234, 1242 (7th Cir. 1994) (citations omitted).  It

is also settled Illinois law that under an Assignment of Rents – the agreement that Gizynski and

Banco Popular entered into with respect to the property at 4944 W. Belmont – the mortgagor (in

this case, Gizynski) is entitled to keep the rents until the mortgagee (here, Banco Popular)

obtains possession of the property.  *See id*. at 1242; *see also Comerica Bank-Illinois v. Harris*

*Bank Hinsdale*, 284 Ill. App. 3d 1030, 1035, 673 N.E.2d 280, 220 Ill. Dec. 468 (1996) (affirming

the trial court's ruling that "the rents collected properly belong to the mortgagor" because they

were "collected during the time that the mortgagor was in possession of the property").

Therefore, although Banco Popular has a lien on the rental payments at 4944 W. Belmont under

the Assignment of Rents, the cash Gizynski deposited with Banco Popular was technically

personal property possessed by Gizynski that was subject to the Banco Citation and the Gizynski

Citation.

**B.      Banco Popular's Perfected Security Interest is Senior to West Bend's
         Judgment Lien on the Cash Deposits**

Under Illinois law, "[t]he lien established under [§ 2-1402] does not affect the rights of

---

[8]  Banco Popular also argues that it did not "possess" the cash deposits because it
immediately applied them to the Mortgage.  Rather than address this claim here, the Court will
review it in a more comprehensive discussion of Banco Popular's violation of the Banco
Citation.

citation respondents in property prior to the service of the citation upon them." 735 ILCS § 5/2-1402(m). Banco Popular perfected the security interest it obtained in the Assignment of Rents in accordance with the Illinois Conveyance Act, 765 ILCS § 5/31.5, on July 1, 2004. (R. 132, Banco Popular Resp., at 6.) West Bend perfected its judgment lien on all personal property in Gizynski's possession by serving the Gizynski Citation on October 28, 2009. *See Cacok*, 111 F.3d at 53 (holding that a citation lien is perfected on the date the citation is served). The parties do not dispute the fact that Banco Popular's perfected security interest in the Assignment of Rents pre-dates West Bend's judgment lien. Nevertheless, West Bend argues that, notwithstanding Banco Popular's perfected security interest, it has the right to the $47,720.00 of rental payments that Gizynski deposited at Banco Popular during the pendency of the citation proceeding because "[Banco Popular] lost any lien once Gizynski collected the rent and possessed cash." (R. 134, West Bend Reply, at 7.) The cases West Bend cites in support of its argument compel the opposite conclusion.

West Bend relies primarily on the Seventh Circuit's opinion in *In the Matter of Wheaton Oaks* to argue that its judgment lien became superior to Banco Popular's perfected lien once Gizynski collected the cash rental payments. *In the Matter of Wheaton Oaks Office Partners Ltd. Partnership*, 27 F.3d 1234 (7th Cir. 1994). In that case, Firstar Dupage Bank ("Firstar") held a properly recorded first mortgage and assignment of rents on properties owned by Chapter 11 debtor-in-possession Wheaton Oaks Office Partners ("WOOP"). The assignment of rents provided that, upon an event of default or breach that WOOP did not promptly cure, Firstar would obtain a security interest in the rents. WOOP defaulted, and Firstar filed a motion in the Chapter 11 proceeding to enforce its security interest in the rent – so that WOOP would be

barred from using the rent monies for other purposes – without first seeking to enforce its assignment of rents by appointing a receiver or taking possession of the property.  The question before the Seventh Circuit was "whether an executed, yet unenforced assignment of rents clause contained in a mortgage *creates* a pre-petition security interest."  *Id*. at 1240 (emphasis in original).  The Seventh Circuit held, unequivocally, yes.  In its ruling, the Seventh Circuit stated: "It is clear, then, that under Illinois law, the failure to enforce an assignment of rents *does not* destroy the legal existence of an effective, enforceable security interest in those rents which came into being upon execution and was perfected upon recordation."  *Id*. at 1245 (emphasis added).

The Seventh Circuit was clear – in its ruling, and in its analyses of Illinois Supreme Court and Appellate Court cases – that intervening judgment creditors cannot subordinate a mortgagee's earlier-perfected priority lien.  *See id*. at 1244-45 (citing *Stevens v. Blue*, 388 Ill. 92, 57 N.E.2d 451 (1944) (holding that when the judgment creditor, "*whose lien was subordinate to that of appellant [mortgagee]*, procured the appointment of . . . [a] receiver, to collect rents to be applied to her claim, she had a right to receive the rents and profits unless and until appellant applied to the circuit court for enforcement of her *senior lien*") (emphasis in original)).  The Seventh Circuit referenced the Illinois Supreme Court's ruling in *Stevens* extensively, and specifically cited the *Stevens* court's finding that "the rule is . . . where [ ] it is [ ] called to the attention of the court that another has rights in the property subject to the receivership superior to the party for whose benefit the receiver is appointed, the court *will not deprive such superior lienholder of his rights*."  *Stevens*, 57 N.E.2d at 453 (emphasis added).  Flatly contradicting West Bend's claims, the Seventh Circuit explained

> So we see that under Illinois law, even if a junior lienholder "wins the race" to possession, his right to collect the rents is still subject to the previously recorded, yet unenforced rent assignment of a previous mortgagee. If it were not so, that is, the mortgagee's superior right to the rents could be extinguished by virtue of an intervening judgment creditor, then how could the Illinois Supreme Court in *Stevens* declare the intervening judgment creditor to be a "subordinate" lienholder?

*In the Matter of Wheaton Oaks*, 27 F.3d at 1245. West Bend's assertion that "[a]s noted by the Court in *Wheaton*, it is a question of whoever 'wins the race,'" *see* R. 134, West Bend Reply, at 11, is thus incorrect.

The other cases West Bend cites in its reply brief fail to support its argument that the Court should subordinate Banco Popular's perfected lien and compel the judgment and turnover of the cash deposits to West Bend. As discussed briefly above, *Comerica Bank-Illinois v. Harris Bank Hinsdale* held that "rents collected properly belong to the mortgagor" when they were "collected during the time that the mortgagor was in possession of the property." *Comerica*, 284 Ill. App. 3d at 1035. That case establishes that the rental payments at issue in this motion were assets that Gizynski possessed, thereby subjecting them to the Gizynski Citation and West Bend's attendant judgment lien. *Comerica* does not, however, address creditors' rights to those encumbered assets. *Comerica* was about a mortgagee's ability to *collect* rents without taking possession of the property – not whether the mortgagee's security interest in the rents would be subordinated in a dispute over rents that the mortgagor had previously collected, as is the case here. It is thus irrelevant to West Bend's lien subordination argument.

Finally, West Bend cites two Northern District of Illinois cases which, it contends, support its judgment and turnover argument. Those cases contain crucial factual distinctions from the present case and are thus inapposite. In *S.E.I.U. Local No. 4 Pension Fund v. Pinnacle Health Care of Berwyn LLC*, 560 F. Supp. 2d 647 (N.D. Ill. 2008), petitioner SEIU sought to

16

enforce a judgment against Pinnacle by recovering funds due to Pinnacle from the Illinois Department of Healthcare and Family Services (IDHFS). Premier Bancorp intervened, claiming that it possessed a perfected security interest in the IDHFS's funds that had priority over SEIU's judgment lien. Much like Banco Popular argues in the present motion, Premier Bancorp asserted that the language in 735 ILCS § 5/2-1402(m) prevented SEIU's judgment lien from affecting its own security interest in Pinnacle's assets. *Id.* at 649. Unlike the present case, however, the security agreement made clear that Premier "only takes on the rights of a secured creditor under the UCC after a default occurs." *Id.* at 650. The security agreement in that case granted Pinnacle "full possession and beneficial use of the collateral until default," and assigned Premier Bancorp a security interest on Pinnacle's assets upon two conditions: (1) a default had to occur, and (2) Premier Bancorp had to take an affirmative step to exercise its rights. *Id.*[9] The court reached the following conclusion:

> I find that Premier does have a prior perfected security interest in Pinnacle's [assets]. However, despite the fact that Pinnacle may have technically defaulted on its loan, because Premier did not declare Pinnacle's loan in default or *follow procedures required by the Security Agreement to enforce its U.C.C. and contractual rights*, Premier does not have a present right to the funds nor a basis on which to object to their release.

*Id.* at 651 (emphasis added).

Unlike the security agreements in *SEIU* and *One CW, LLC*, the Assignment of Rents signed by Banco Popular and Gizynski on June 25, 2004 "grants a continuing security interest in, and conveys to [Banco Popular] all of [Gizynski's] right, title, and interest in and to the Rents"

---

[9] The other case West Bend cites in its argument, *One CW, LLC v. Cartridge World North America, LLC*, 661 F. Supp. 2d 931 (N.D. Ill. 2009), involves a security agreement that "contains the same language as the security agreement in *S.E.I.U.*" *One CW, LLC*, 661 F. Supp. 2d at 934. *One CW, LLC* is thus similarly inapposite. For the sake of brevity, the Court will not discuss that case in detail.

from 4938-44 West Belmont, Chicago, Illinois. (R. 132-4, Assignment of Rents, at 1.) The agreement contains no preconditions or qualifications to claiming that security interest. Although the agreement allows Gizynski to "remain in possession and control of and operate and manage the Property and collect the Rents" until and unless Banco Popular exercises its own right to collect the rents, Gizynski may only do so "provided that the granting of the right to collect the Rents shall not constitute [Banco Popular's] consent to the use of cash collateral in a bankruptcy proceeding." (*Id*. at 2, Payment & Performance.) This explicitly expresses the parties' intent that the rental payments constitute assets encumbered by a pre-petition lien. Thus, in accordance with the terms of the Assignment of Rents, Banco Popular's security interest attached immediately upon signing the agreement. Banco Popular perfected its interest on July 1, 2004. Banco Popular is not required to take any action to "execute" its interest, as the security agreements in *SEIU* and *One CW, LLC* demanded. West Bend's argument fails, and the Court finds that Banco Popular holds a priority lien on the rental payments Gizynski collected between January-July 2010. Accordingly, the Court denies West Bend's motion for judgment and turnover of those cash deposits.

C.     **Banco Popular Violated its Citation, but the Violation Does Not Compel Turnover of the Cash Payments**

West Bend correctly asserts that Banco Popular violated its third party citation when it accepted Gizynski's January-July 2010 cash deposits and applied them to his Mortgage. The Banco Citation explicitly states: "**YOU ARE PROHIBITED** from making or allowing any transfer or other disposition of, or interfering with, any property not exempt from execution or garnishment belonging to the judgment debtor or to which the judgment debtor may be entitled . . . until further order of the court or termination of the proceedings." (R. 132-1, Banco Citation,

at 2) (emphasis in original).  Banco Popular's attempt to deflect its wrongdoing and argue that it "has no duty to police Gizynski's actions under the Gizynski Citation" misses the point.  Upon service of the Banco Citation, Banco Popular had clearly enunciated responsibilities under the *Banco* Citation.  Its failure to comply with those responsibilities violated the citation.[10]

### 1.   Banco Popular's failure to freeze the non-exempt cash deposits violated the Banco Citation

The law is clear that a citation to discover assets prohibits the cited party from transferring assets presently in its possession or that later come into its possession.  735 ILCS § 5/2-1402(m)(2).  The purpose underlying the restraining provision of § 2-1402 is to provide "a means of forestalling the judgment debtor or a third party from frustrating the supplementary proceedings before the judgment creditor has had an opportunity to reach assets . . . in the possession of [the] debtor or of a third party."  *Bank of Aspen v. Fox Cartage, Inc.*, 126 Ill.2d 307, 314 (1989) (citing *Kirchheimer*, 100 Ill. App. 3d at 362).  Section 2-1402 "is designed to provide a statutory foundation for an efficient and expeditious procedure for discovery of assets and income of the judgment debtor and compelling their application to the payment of the judgment."  *Id*.

The statute creates only two exceptions to the prohibition on transfer: the transfer of

---

[10]  Banco Popular also attempts to insert a "knowledge" requirement into the citation. *See* R. 132, Banco Popular Resp., at 3 ("Banco was prevented only from allowing the transfer or disposition of assets which it *knew* to be Gizynski's . . .") (emphasis in original).  Banco Popular provides no case law to support this reading of the citation, and nothing in the language of the citation or the Illinois statute governing citation proceedings suggests this interpretation. Furthermore, even if there were such a requirement, the cash deposits were accompanied by a payment stub for Gizynski's personal Mortgage.  (*Id*.)  This placed Banco Popular on notice that the cash being deposited for payment of Gizynski's personal Mortgage might – and likely did – belong to Gizynski.

exempt property, and property in excess of double the balance due on the judgment. 735 ILCS §

5/2-1402(f)(1). Courts have consistently condemned any deviation from this directive. *See*

*Laborers' Pension Fund v. Dominic Jr., Inc.*, No. 02 C 3321, 2003 WL 21310282, at *2-3

("Defendant has not presented, and this court's research has not disclosed, any authority

suggesting that the employer may decide unilaterally and without prior court approval to issue

checks to workers from an account subject to the citation lien."); *City of Chicago v. Air Auto*

*Leasing Co.*, 297 Ill. App. 3d 873, 879, 697 N.E.2d 788, 232 Ill. Dec. 46 (1998) (holding that

citations issued under 735 ILCS § 5/2-1402 do not allow payments to trade creditors or to third

parties for any purpose, and that there is no exception in the statute for transfers in the "ordinary

course of business"). Neither of the two statutory exceptions are present in this case, and

Gizynski has not requested – and thus the Court has not authorized – any additional exemptions.

The citation order did not ask Banco Popular to independently assess the priority interests

of the various parties involved in this case and act as it deemed proper. *See One CW, LLC*, 661

F. Supp. 2d at 937. Regardless of Banco Popular's beliefs about the priority of its lien on the

cash deposits, Banco Popular was required to hold Gizynski's cash deposits until the Court could

adjudicate the interests of the creditors. *Id.*; *see also Cacok*, 111 F.3d at 54 (endorsing the

district court's prohibition on a third party citation respondent's transfer of the judgment debtor's

assets until the claims to those assets were judicially adjudicated); *In re Weitzman*, 381 B.R. 874,

881 (Bankr. N.D. Ill. 2008) ("The prohibition is in place to account for and preserve the

judgment debtor's assets until the court decides whether those assets should be used to pay down

the judgment") (citation omitted); *Kirchheimer*, 100 Ill. App. 3d at 362 ("A restraining provision

under this section does not adjudicate any rights in the property held by the party to whom it is

addressed; it merely requires that the party hold property which is subject to the reach of the judgment creditor in status quo until the judgment creditor's rights can be determined") (citation omitted). Banco Popular's failure to freeze the cash payments, and its unilateral decision to instead proceed by assigning the deposits to the Mortgage, thus violated the terms of the citation.

### 2. Punishment for violating the Banco Citation

Illinois law provides that a court may punish violations of the restraining provision of a citation, as follows:

> The court may punish any party who violates the restraining provision of the citation as and for a contempt, or if the party is a third-party may enter judgment against him or her in the amount of the unpaid portion of the judgment and costs allowable under this Section, or in the amount of the value of the property transferred, whichever is lesser.

735 ILCS § 5/2-1402(f)(1). Disputes regarding a respondent's rights to the property discovered in a citation proceeding are governed by the law relating to garnishment proceedings. *See* 735 ILCS § 5/2-1402(g). In light of the fact that the parties have thoroughly briefed the lien priority issue in their submissions, the Court need not wait to adjudicate the matter. Because Banco Popular holds a senior, perfected lien on the cash deposits Gizynski made between January-July 2010 that is not subordinated by West Bend's judgment lien, the Court denies West Bend's motion to order Banco Popular to turnover the funds.

Because Banco Popular violated the terms of its citation, however, the Court orders Banco Popular to pay the reasonable costs associated with bringing this motion, in accordance with 735 ILCS § 5/2-1402(h).[11] Furthermore, pursuant to 735 ILCS § 5/2-1402(f)(2), the Court hereby enjoins Banco Popular from "making or allowing any transfer or other disposition of, or

---

[11] In light of the Court's ruling (below) that Gizynski also violated the terms of his citation, the Court finds Banco Popular and Gizynski jointly and severally liable for these costs.

interference with," any future deposits it receives for application to Gizynski's Mortgage. This injunction order shall remain in effect until vacated by the Court or until the Banco Citation terminates, whichever occurs first. *Id*. Banco Popular shall notify West Bend in writing of any future deposits relating to Gizynski's Mortgage within no more than seven business days from the date of deposit, for the duration of this enforcement proceeding or until the Court otherwise orders. The notice shall state the date of deposit, the amount deposited, and the method (i.e. cash or check) of the deposit, and it shall include a certified copy of the deposit slip.

## III.    Gizynski's Citation Violation

A citation to discover assets may include, as it does in the Gizynski Citation, a restraining provision that "prohibit[s] the party to whom it is directed from making or allowing any transfer or other disposition of, or interfering with, any property not exempt from the enforcement of the judgment." 735 ILCS 5/2-1402(f)(1). The purpose of this is to prevent the citation respondent "from transferring funds which may become due to the judgment debtor, in order to insure that the latter does not abscond with money that is due." *Cacok*, 111 F.3d at 54 (quoting *Kirchheimer*, 100 Ill. App. 3d at 362). Illinois law provides that a court may punish violations of the restraining provision of a citation "as and for a contempt." 735 ILCS 5/2-1402(f)(1); *see also* Ill. Sup. Ct. R. 277(h) ("[a]ny person who fails to obey a citation ... may be punished for contempt."). West Bend asks the Court to issue an order to show cause, requiring Gizynski to explain why he should not be held in contempt for violating the terms of the Gizynski Citation.

"In certain limited circumstances, a district court may treat a show-cause motion as a motion for an order on the merits of the alleged contempt where doing so would not cause prejudice-that is, when it would not violate the alleged contemnor's right to notice and an

opportunity to be heard." *United States S.E.C. v. Hyatt*, 621 F.3d 687, 696 (7th Cir. 2010) (citing 5 Wright & Miller, Federal Practice and Procedure § 1195 (3d ed. 2004) ("[A] request for a show cause order usually will be entertained and treated as a motion, if doing so will not prejudice the opposing parties." (emphasis added)); *Sommerfield v. City of Chicago*, 252 F.R.D. 407, 414 (N.D. Ill. 2008) ("[T]he motion may properly be viewed as a motion for contempt since it asked for a finding of contempt and a miscellany of significant sanctions, the City has responded, and the matter has been fully briefed by both sides. Thus, it is as though the rule to show cause had been granted."). In this case, West Bend gave Gizynski explicit notice of its claims against him in its motion, and Gizynski fully responded to West Bend's theories, arguments, and supporting evidence. *Hyatt*, 621 F.3d at 696 (citing *Am. Family Mut. Ins. v. Roth*, No. 05 C 3839, 2007 WL 2377335, at *14 (N.D. Ill. Aug. 16, 2007) (treating show cause motion as a motion on the merits of contempt)); *see also Orion Indus., Inc. v. Antenna Co.*, No. 87 C 6788, 1991 WL 70862, at *4 (N.D. Ill. Apr. 27, 1991) ("[E]ven a cursory review of the briefs filed and the court transcripts in this case, reveals that from the moment the motion for a rule to show cause was first presented to Magistrate Judge Lefkow, the parties argued the motion on the merits, and treated the motion like it was a motion for an order finding the defendants in contempt of court."). The Court therefore denies West Bend's motion for a show cause order and proceeds directly to evaluating the merits of West Bend's contempt claim.

"A court's civil contempt power rests in its inherent limited authority to enforce compliance with court orders and ensure judicial proceedings are conducted in an orderly manner." *United States v. Dowell*, 257 F.3d 694, 699 (7th Cir. 2001). To be held in civil contempt, "the district court must be able to point to a decree from the court which 'sets forth in

specific detail an unequivocal command' which the party [or witness] in contempt violated."

*Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 737-38 (7th Cir. 1999) (internal citations omitted).

"Civil contempt proceedings are coercive and remedial, but not punitive, in nature and sanctions

for civil contempt are designed to compel the contemnor into compliance with an existing court

order or to compensate the complainant for losses sustained as a result of the contumacy." *Id.*

To prevail on a request for a contempt finding, the moving party must establish by clear

and convincing evidence that: (1) a court order sets forth an unambiguous command; (2) the

alleged contemnor violated that command; (3) the violation was significant, meaning the alleged

contemnor did not substantially comply with the order; and (4) the alleged contemnor failed to

make a reasonable and diligent effort to comply. *Hyatt*, 621 F.3d at 692. Furthermore, West

Bend must show that Gizynski's actions were contumacious. *Bank of Aspen*, 126 Ill.2d at 321.

There is no question that Gizynski violated the terms of the Gizynski Citation by collecting cash

rental payments and depositing them at Banco Popular. The Court does not, however, find that

those transfers meet the high legal standard required for a finding of contempt. West Bend

points to evidence that it advised Gizynski in his January 2010 deposition that he was

"prohibited from transferring any of the assets [he] receive[d]," *see* R. 116-2, Gizynski

Deposition Excerpt, at 7, to characterize his later conduct as "contemptuous." The Court notes,

however, that Gizynski received this admonishment from opposing counsel – not his own

attorney – and it was delivered at least halfway into the deposition, in a single sentence. (*Id.*)

Gizynski has presented several explanations for why he deposited the funds with Banco Popular,

the most credible being that he did not understand that a transfer of this nature (depositing rental

payments he collected to his Mortgage account at Banco Popular) would be prohibited under the

24

terms of the citation. West Bend has not demonstrated, and the Court thus cannot find, that Gizynski's conduct rose to the level of contempt.

The Court is, however, concerned about Gizynski's general compliance with the Gizynski Citation. In light of other testimony that West Bend did not raise in its motion but that the Court noted while reading the transcript of Gizynski's September 27, 2010 deposition – in particular, Gizynski's admitted failure to maintain any records of rents he collected at 4944 West Belmont, and his troubling statement that he spent monies he collected from tenants on physical therapy visits in September 2010, *see* R. 132-3, Gizynski Deposition II, at 33-34, 35-36 – the Court will exercise its discretion under 735 ILCS § 5/2-1402(f)(2) and enjoin Gizynski from making or allowing any transfer or other disposition of, or interference with, all non-exempt assets or property he possesses or comes to possess. This injunction shall remain in effect until vacated by the Court or until the underlying supplementary proceeding is terminated, whichever occurs first. Gizynski shall file a submission with the Court by no later than January 7, 2011 setting forth any exemptions he wishes to claim on his income, assets, or both. *See* 735 ILCS § 5/2-1402(b). The Court will make a prompt determination as to whether the sought exemptions are, in fact, exempt from judgment.[12] In addition, the Court grants West Bend's request for a cash accounting, and orders Gizynski to provide an accounting of his assets to West Bend on or before January 7, 2011. Finally, because Gizynski violated the terms of his citation by transferring his assets, the Court finds Gizynski jointly and severally liable for the costs West Bend incurred in bringing this motion.

---

[12] The injunction ordered in this ruling will not apply to any property the Court determines to be exempt. 735 ILCS § 5/2-1402(l).

## CONCLUSION

The Court grants in part and denies in part West Bend's (1) Motion for Rule to Show Cause Against Mark Gizynski, and (2) For Judgment and Turnover Order Against Banco Popular. In accordance with its ruling, the Court sets the following deadlines: (i) West Bend shall submit a fee petition for the costs incurred by bringing this motion on or before January 5, 2011; (ii) Gizynski shall provide a cash accounting to West Bend on or before January 7, 2011; and (iii) Gizynski shall file a submission with the Court describing any exemptions he seeks to claim on or before January 7, 2011.

**Date:** December 23, 2010

**ENTERED**

**AMY J. ST. EVE**
**United States District Court Judge**