# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 09 C 354 | **DATE** | 3/8/2011 |
| **CASE TITLE** | West Bend Mutual Ins Co vs. Belmont State Corp | | |

**DOCKET ENTRY TEXT**

The Court denies West Bend's Renewed Motion to Enforce Its Judgment Against Funds Paid to Banco Popular [125].

■ [ For further details see text below.]   Notices mailed by Judicial staff.

## STATEMENT

Before the Court is Plaintiff West Bend Mutual Insurance Company's ("West Bend") Renewed Motion to Enforce Its Judgment Against Funds Paid to Banco Popular. For the following reasons, the Court denies West Bend's motion.

### BACKGROUND

The Court presumes the parties' familiarity with the procedural history of this matter. To briefly summarize, West Bend obtained a default judgment against Defendants Belmont State Corporation ("Belmont") and Mark Gizynski in the amount of $2,150,330.60. West Bend initiated a third party citation proceeding to discover assets against Banco Popular North America ("Banco Popular") on October 29, 2009. Banco Popular responded by providing documents and information regarding, among other things, several checks that were drawn on Belmont's checking account at US Bank, made payable to Banco Popular, and applied to Gizynski's personal mortgage account. The documents revealed that between 2007 and 2008, Gizynski signed and deposited thirteen such checks, totaling $128,957.49.

Continued...

| | Courtroom Deputy Initials: | KF |
|---|---|---|

On January 21, 2010, West Bend filed a motion asking the Court to impose a constructive trust on those funds and to order Banco Popular to turn them over. After careful consideration of the parties' briefs and supporting exhibits, the Court found that West Bend had established that Banco Popular had a duty to exercise due care to ensure that Belmont had intended Gizynski to receive its money. (R. 77, April 21, 2010 Mem. Op. & Order.) Specifically, the Court held that, in accordance with Seventh Circuit law, Banco Popular had a common law duty arising in tort to inquire as to the legitimacy of the checks to ensure that the deposits were authorized. *Travelers Cas. & Sur. Co. of Am. v. Wells Fargo Bank N.A.*, 374 F.3d 521 (7th Cir. 2004); *Mutual Serv. Cas. Ins. Co. v. Elizabeth State Bank*, 265 F.3d 601 (7th Cir. 2001). The Court denied West Bend's motion without prejudice as to this common law claim, however, because the parties' briefs and documentary evidence revealed factual disputes that prevented a ruling on Banco Popular's liability. The Court identified two factual disputes requiring resolution: (1) the extent to which Banco Popular knew about the relationship between Gizynski and Belmont when it applied the checks to Gizynski's mortgage account; and (2) whether Gizynski was authorized to apply Belmont funds to his personal mortgage with Banco Popular.

Although the Court denied West Bend's motion without prejudice, it held that West Bend had established a right to an evidentiary hearing or trial on the matter, and instructed the parties to file a joint status report indicating whether they would need to conduct any additional discovery in advance of the hearing. The Court continued the third party citation proceeding against Banco Popular through the anticipated hearing. (R. 88.)[1] In a joint status report, the parties represented that they would need to conduct additional discovery before an evidentiary hearing could be held. Relying on the parties' joint status report, and on a subsequent request by Banco Popular seeking additional time for discovery, the Court scheduled a November 1, 2010 status hearing to set a date for the anticipated evidentiary hearing. On September 29, 2010, West Bend filed the instant renewed motion to enforce judgment against Banco Popular. (R. 125, Renewed Mot.) In its renewed motion, West Bend asserts that the disputed issues of fact have been resolved, thus obviating the need for an evidentiary hearing. (*Id.* at 1.) On November 8, 2010, counsel for both parties informed the Court that no hearing was necessary and that the Court should rule on the briefs.

## ANALYSIS

In 2007 and 2008, Gizynski deposited thirteen checks from Belmont's checking account with US Bank to his personal mortgage account at Banco Popular. The checks were made payable to Banco Popular, and were accompanied by a payment stub indicating they should be applied to Gizynski's personal mortgage account. Gizynski signed each of the checks. Belmont did not maintain any bank accounts at Banco Popular, and the parties have submitted no evidence to suggest that Belmont ever had any sort of contractual agreement with Banco Popular. After careful analysis, the Court determined in its April 21, 2010 ruling that given the circumstances of the case, and the nature of the relationships (or, more precisely, lack thereof) between Belmont and Banco Popular, Illinois common law imposed a duty arising in tort which required Banco Popular to inquire as to the legitimacy of the deposited checks. That duty to inquire, a rare but firmly established "good Samaritan" liability that arises when a bank receives a check made out to it by a drawer who owes the bank no money, places the burden on banks to "rescue" the drawer from a possible fraud. *Travelers*, 374 F.3d at 527.

Banco Popular's liability under that common law tort rests on two questions: did Banco Popular satisfy its duty to inquire, and if not, was Gizynski authorized to deposit Belmont's funds into his personal account? If Gizynski was authorized to deposit those sums, then Belmont cannot obtain the relief it seeks. *Id.* at 524. West Bend bears the burden of proving that Belmont did not authorize the checks made out to Banco Popular and

---

[1] The Banco Citation remains in full force and effect pursuant to Supreme Court Rule 277(f), in the interest of justice. *See* R. 145, Dec. 23, 2010 Mem. Op. & Order.

deposited by Gizynski. *Id*. ("[E]ven if Travelers proved that Schwab had violated its duty to Allianz, in order to obtain relief Travelers would have to show that Schwab, had it fulfilled its duty, would have discovered that Allianz had not authorized the check to Schwab."); *see also id*. at 529.

During the supplemental discovery period, West Bend deposed William Bolsen, a Vice President of Commercial Real Estate Lending at Banco Popular, and Michael Randazzo, Senior Vice President and Director of Operations at Banco Popular. The parties also propounded additional written discovery. In its renewed motion, West Bend submits the transcripts from those depositions and presents the findings of the parties' written discovery. *See* R. 125-1 to 125-7, Exhibits to Renewed Mot.

I.  **Banco Popular's Duty To Inquire Does Not Arise Under Contract Law**

In its renewed motion, West Bend argues that Banco Popular's common law duty to inquire arises under contract law. (Renewed Mot. at 9-10.) As the Court previously ruled, however, the duty to inquire arises here under tort law. *See* April 21 Mem. Op. & Order at 7 n.3. The Seventh Circuit clearly stated in *Travelers* – where it applied Illinois common law to a case factually similar to the present matter – that "[t]he duty is imposed, it should be noted, as a matter of tort law rather than contract law or UCC law (which is mainly contract law); there was no contractual relation between Schwab and Allianz." *Travelers*, 374 F.3d at 526. Despite West Bend's assertions that the duty arises out of an implied contract between Belmont and Banco Popular, the Court is bound to follow Seventh Circuit precedent. *See Bingham v. New Berlin Sch. Dist.*, 550 F.3d 601, 605 (7th Cir. 2008) (citing *Hutto v. Davis*, 454 U.S. 370, 375, 102 S.Ct. 703, 70 L.Ed.2d 556 (1982)) ("[U]nless we wish anarchy to prevail within the federal judicial system, a precedent [ ] must be followed by the lower federal courts.")). West Bend seems to have ignored the *Travelers* opinion, for it appears nowhere in West Bend's Renewed Motion.[2]

---

[2] In arguing that Banco Popular's duty to inquire arises from an implied contract it had with Belmont, West Bend cites a handful of Illinois appellate court cases, as well as the Seventh Circuit's *Mutual Service* opinion (which predates the *Travelers* opinion). Those cases do not compel a conclusion contrary to the one the Court reaches here. Rather, they demonstrate that Illinois courts have long recognized a common law duty to inquire which arises when a bank receives a check payable to the order of the bank from a drawer who owes it no debt. In the cases West Bend cites that involve situations where the drawer had a contractual relationship with the bank, the courts found the common law duty of care arises as an implied term of the parties' express contract. *See Mutual Serv.*, 265 F.3d at 615-16 ("The bank's liability in this case rests on the duty of care it owed to Jo Daviess by virtue of the contract between the two of them."); *Continental Cas. Co., Inc. v. American Nat'l Bank & Trust Co. of Chicago*, 329 Ill.App.3d 686, 693, 768 N.E.2d 354 (2002) ("In the present case, ANB's liability rests on the duty of care that it owed to GAI by virtue of their contractual relationship."). In the cases West Bend cites in which the parties do not have contractual relationships, the courts find a common law duty to inquire but do not attribute the duty to a theory of implied contract. Indeed, *Douglass v. Wones*, 120 Ill.App.3d 36, 45-46, 458 N.E.2d 514 (Ill. App. 1983), *Paine v. Sheridan Trust & Sav. Bank*, 255 Ill.App. 250, 1929 WL 3406, at *4 (Ill. App. 1929), and *Nelson v. Peoples Bank & Trust Co. of Rockford*, 271 Ill.App. 41, 1933 WL 4479 (Ill. App. 1933), all cite *Milano v. Sheridan Trust & Sav. Bank,* 242 Ill.App. 362, 1926 WL 3944 (Ill. App. 1926), which holds that "as the checks upon their face showed that they were drawn by the association to the order of the defendant, with which the association had no account and to which it was not indebted, it became the duty of the bank, if it accepted said checks, to collect the proceeds thereof and hold the same subject to the order of the association, and that the bank was *negligent* in crediting the proceeds of said checks to the personal account of Tresidder." (emphasis added)

This omission is unfortunate because the facts presented in *Travelers* mirror those presented here – and, most important for the purpose of determining where the duty arises, the fact that Belmont and Banco Popular had no contractual relationship compels a finding, as set forth in *Travelers*, that Banco Popular's common law duty to inquire arises under tort law.

Having clarified the proper basis upon which to determine Banco Popular's liability, the Court turns to its analysis of whether Banco Popular violated its duty to inquire.

## II. Banco Popular Violated Its Duty To Inquire

West Bend argues that Banco Popular violated its common law duty to inquire as to the legitimacy of the checks Gizynski deposited for application to his personal mortgage. West Bend supports its claim with affidavits and deposition testimony from Banco Popular employees. Banco Popular does not contest that it violated its duty to inquire, perhaps because the evidence clearly demonstrates a violation.

"The common law of Illinois as of other states requires a bank, if someone tries to deposit a check made out to it in his own account, to exercise due care to make sure that the drawer (the third party) intended the depositor to receive the drawer's money." *Travelers*, 374 F.3d at 525 (citations omitted). In order to fulfill its duty, the bank must "check with the drawer or take other steps to make reasonably sure that the deposit is authorized." *Id*. at 526. Here, the uncontroverted evidence submitted to the Court demonstrates that Banco Popular did nothing to verify Gizynski's authority to deposit the checks to his personal account. West Bend presents testimony from Michael Randazzo, the current Senior Vice President and Director of Operations at Banco Popular, who was responsible for overseeing the loan and deposit operations for the bank in 2007 and 2008. (R. 125-4, Randazzo Dep., 7:5-9.) In a sworn affidavit to the Court, Mr. Randazzo describes the bank's processing of loan payments as follows:

> 4. Checks [sic] Payments are received by Banco's Payment Processing Department.
>
> 5. Once received, the checks are not sent to the loan officer handling the loan, but rather, a third party processing center who processes the payment and posts the items as paid to an account. The account to be credited is identified by a loan number that appears on either the check itself or the payment stub is mailed with the check payment.
>
> 6. After the payments are processed by the payment processing department, the payments would appear on a computer generated transaction history that would detail the date payment was made, the effective date of the transaction and the breakdown of how funds were posted...

(R. 125-4, Randazzo Aff.) Mr. Randazzo further stated, "This process is the standard practice at Banco regarding loan payment processing. The loan officer in charge of the account only sees a numerical report of the payments and has no contact with the actual check or other form of payment. Likewise, the payment processing employee who receives the check has no knowledge of facts underlying the account other than that payment was being made to the designated account loan number as listed on the check or payment stub payment itself." (*Id*. at ¶¶ 7, 8.) Nothing about this process suggests that Banco Popular's payment processing system includes – at any point – a step wherein the employee verifies the depositor's authority to apply a check drawn on a third party's account. Mr. Randazzo's deposition testimony unequivocally confirms that conclusion:

> Q: Do [the people who work in the department that opens up the envelopes and matches loan payments to payment stubs] ever match up the name of the check to the borrower to make sure that a check that they've got in their – let's say in their left hand is matching the borrower that's shown

> on the stub in their right hand?
>
> A: Only if the stub was not included.
>
> Q: Okay. So procedure at the Bank is not to ascertain who is making the payment and, and match that to the borrower if they have the stub and the check?
>
> A: That's correct.
>
> ...
>
> Q: So there is no internal procedure at your bank to identify payments that are coming from third parties that are being applied to personal indebtedness of customers at the Bank?
>
> A: No.

(R. 125-4, Randazzo Dep., 12:14-24, 13:8-12.)

William Bolsen, a Vice President of Commercial Real Estate Lending at Banco Popular, provided similar testimony during his deposition. Moreover, Mr. Bolsen – Gizynski's loan agent – testified specifically as to Gizynski's loan payments:

> Q: To your knowledge, did anyone on behalf of Banco Popular in 2008 investigate whether Belmont State authorized the application of its funds represented by the checks [ ] to the personal indebtedness of Mark Gizynski to the Bank?
>
> A: I do not believe that in 2008 anybody from the Bank made that inquiry, made those inquiries.

(R. 125-1, Bolsen Dep. at 26:19-27:3.) Mr. Bolsen reiterated this testimony later in his deposition, *see* Bolsen Dep. at 46:3-9, 47:3-13, and in a sworn affidavit to the Court, *see* R. 125-2, Bolsen Aff. at ¶¶ 10-14. Banco Popular's interrogatory responses state the same. (R. 125-5, Banco Popular's Answers to Plaintiff's Interrogatories, at 4 (failing to identify anyone at Banco Popular who inquired as to Gizynski's authority to apply Belmont checks, payable to Banco Popular, to his personal mortgage loan with Banco Popular)). West Bend submitted copies of the physical checks to the Court, and they clearly list Belmont State Corporation as the payor, and provide an address and a phone number for Belmont. *See* R. 125-5 at 9-18. The face of the checks also clearly state that they are from US Bank. *Id*. Banco Popular provides no defense for why it did not even attempt to fulfill its duty to inquire. In light of the overwhelming evidence, and given the lack of any response by Banco Popular, the Court finds that Banco Popular violated its common law duty to inquire.

### III. West Bend Fails To Prove That Belmont Did Not Authorize Gizynski To Deposit The Checks Into His Personal Mortgage Account

As the Court stated at the outset of its analysis, for West Bend to recover the funds at issue, it must do more than simply prove that Banco Popular violated its common law duty to inquire. West Bend must also establish that Belmont did not authorize Gizynski to deposit the checks to his personal mortgage account at Banco Popular. *Travelers*, 374 F.3d at 524. West Bend attempts to shift its burden to Banco Popular. In its Renewed Motion, West Bend argues that the burden lies on Banco Popular to prove that Belmont authorized Gizynski to deposit the checks for his personal use. Once again, West Bend ignores the Seventh Circuit's binding holdings in

*Travelers* and instead cites cases involving agents and fiduciaries.[3] In its response, Banco Popular rejects West Bend's attempt to reassign the burden and cites the Seventh Circuit's clear directive in *Travelers* for support. West Bend finally acknowledges *Travelers* in its reply brief and argues that Banco Popular incorrectly interprets *Travelers* and misapplies that court's ruling to this case. The Court disagrees with West Bend's analysis. Again, the Seventh Circuit clearly states, "[E]ven if Travelers proved that Schwab had violated its duty to Allianz, in order to obtain relief Travelers would have to show that Schwab, had it fulfilled its duty, would have discovered that Allianz had not authorized the check to Schwab." *Id*. The Seventh Circuit places the burden to show authority (or lack thereof) squarely on the plaintiff – here, West Bend.

Although West Bend established that Banco Popular violated its duty to inquire, West Bend does not present evidence demonstrating that Belmont had not authorized Gizynski to make the deposits in question. West Bend submits written discovery responses from Banco Popular which indicate that the bank was not familiar with Gizynski's relationship with Belmont, and that Banco Popular did not consider Belmont's lease with Gizynski in determining whether to deposit the checks. *See* R. 125-5, Banco Popular Discovery Responses; *see also* R. 125-6, Banco Popular Supplemental Discovery Responses. Those admissions speak to Banco Popular's failure to inquire, however, and do not establish whether or not Belmont authorized Gizynski to draft and deposit the checks at issue. West Bend submits a January 27, 2010 letter from Gizynski to Banco Popular in which Gizynski asserts that Belmont authorized him to pay his mortgage account with Belmont checks because he advanced Belmont moneys at other times. (R. 125-3, Gizynski Letter, at 21.) West Bend argues that the Court should not give credence to this letter – written after West Bend began litigating this matter – because it is unreliable. The Court agrees. Banco Popular argues that Belmont's failure to object to the application of these checks at any point during 2007, 2008 or beyond indicates Belmont's ratification of their application. Although the Court finds merit in that argument, it need not consider it because the burden rests squarely with West Bend, and West Bend has provided no evidence to suggest that Gizynski acted without authority. Because West Bend fails to prove that Gizynski acted without authority in depositing the Belmont checks and applying them to his personal mortgage account, the Court denies West Bend's motion.

**CONCLUSION**

For the reasons discussed above, the Court denies West Bend's Renewed Motion to Enforce Its Judgment Against Funds Paid to Banco Popular.

---

[3] The Court rejected West Bend's contention that Gizynski was acting in a fiduciary capacity in writing these checks in its April 21, 2010 Order, and again in its May 7, 2010 ruling on West Bend's Motion to Clarify and/or Reconsider. *See* R. 88. West Bend does not submit any evidence or argument to the Court in connection with its renewed motion to alter the Court's conclusion in that regard. West Bend raises the issue in its reply brief by noting that the Court found – in a different matter, involving different parties – that Gizynski acted as an agent of Belmont. (R. 139, West Bend Reply, at 7) (citing R. 124, Sept. 9, 2010 Mem. Op. & Order, regarding Gizynski's payment of Belmont checks to third party citation respondent MJG Corporation). As the Seventh Circuit held in *Mutual Service*, however, a finding that an individual is a fiduciary for one purpose does not mean they are a fiduciary for all purposes. *See Mutual Serv.*, 265 F.3d at 622 (noting that 810 Ill. Comp. Stat. § 5/3-307 "defines a 'fiduciary' as 'an agent, trustee, partner, corporate officer or director, or other representative owing a fiduciary duty *with respect to an instrument*'" (emphasis in original) before concluding that "Hemmen may have been a fiduciary for some purposes, but he did not qualify as a fiduciary [for others]. (citations omitted)").