# In the
# United States Court of Appeals
## For the Seventh Circuit

CERTIFIED COPY
A True Copy
Teste:

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

Nos. 11-1811 & 11-1959

WEST BEND MUTUAL INSURANCE COMPANY,

*Plaintiff-Appellant,
Cross-Appellee,*

*v.*

BELMONT STATE CORPORATION, *et al.*,

*Defendants,*

*and*

BANCO POPULAR NORTH AMERICA,

*Respondent-Appellee,
Cross-Appellant.*

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 09 C 354—**Amy J. St. Eve**, *Judge*.

ARGUED SEPTEMBER 6, 2012—DECIDED MARCH 19, 2013

Before EASTERBROOK, *Chief Judge*, and FLAUM and WILLIAMS, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. Belmont State Corp. did not pay subcontractors and suppliers for work and materials on some projects. Jan Gad, its CEO, is on the lam. West Bend Mutual Insurance Co. laid out more than $2 million to satisfy Belmont's obligations and has a judgment for that amount against Belmont, Gad, and Mark Gizynski. This appeal presents several questions arising from West Bend's effort to recover some of the $2 million from Banco Popular, where Gizynski had an account.

Gizynski signed checks for more than $100,000 on Belmont's account at U.S. Bank. The checks were payable to Banco Popular (the Bank). Gizynski told it to apply the funds to his outstanding loan. He had borrowed on the security of some commercial real estate; it had both a mortgage and an assignment of the rents. Belmont was among Gizynski's tenants; the Bank knew this from a lease in its files. So it did not become suspicious when Gizynski told it to route money from Belmont to the balance of the mortgage loan, and it did not ask Belmont how the funds were to be applied—even though the Bank, not Gizynski, was the payee on the checks.

Illinois law, which controls all of the issues in this diversity litigation, requires banks named as payees to ask the drawer how funds are to be applied; they cannot just take the word of whoever has the checks in his possession. See *Mutual Service Casualty Insurance Co. v.*

Nos. 11-1811 & 11-1959 3

*Elizabeth State Bank*, 265 F.3d 601 (7th Cir. 2001) (Illinois law). The Bank did not ask Belmont, and West Bend wants it to restore the funds—which means that the money would inure to West Bend's benefit.

Undisputed evidence establishes that the Bank failed to ask Belmont how the funds should be applied. 2010 U.S. Dist. LEXIS 39318 (N.D. Ill. Apr. 21, 2010). But the district judge thought that a factual dispute remained: what would Belmont have said, had it been asked? If Belmont's management would have told the Bank to use the checks for Gizynski's benefit, then its failure did not harm Belmont, and West Bend lacks a claim against the Bank—though West Bend might well have a claim against Gad or Gizynski for diverting funds in which West Bend had a superior interest. The judge directed the parties to present evidence about how Belmont would have replied to a query from the Bank. Gizynski testified that Gad, as CEO, would have told the Bank to do whatever Gizynski wanted. The judge found Gizynski not credible about this or much of anything else. But disbelieving Gizynski does not necessarily imply the opposite of his statements. Since Gad has absconded, that left the record essentially blank.

The judge held that West Bend, as the plaintiff, has the burden of production and the risk of non-persuasion. The court relied not only on the normal rules of civil litigation but also on *Travelers Casualty & Surety Co. v. Wells Fargo Bank N.A.*, 374 F.3d 521 (7th Cir. 2004), which placed these burdens on the plaintiff in a fraudulent-check case. Because disbelief of Gizynski does not dem-

onstrate what Gad would have said, had he been asked, the district court entered judgment for the Bank. 2011 U.S. Dist. LEXIS 23329 (N.D. Ill. Mar. 8, 2011).

In this court, West Bend tries to sidestep the evidentiary problem by contending that the Bank had a duty to open a new account in Belmont's name and deposit the checks there, keeping the money on ice until it received further instructions. Then Belmont's silence would mean that the money remained available to its creditors. One problem with this position is lack of a source in Article 3 of the Uniform Commercial Code, which governs banking transactions, or any Illinois decisional law. We said in *Mutual Service Casualty* that Illinois requires the drawee to ask the drawer, not to open a new account. No state decision has suggested otherwise in the twelve years since. Federal courts in diversity litigation try to predict how the state judiciary will rule. Having made a prediction in *Mutual Service Casualty*, we stand pat unless the state appears restive. West Bend does not rely on any state decision for its "open an account and wait" proposal. If it wanted to seek a change in state law—or to ask the state judiciary to declare that *Mutual Service Casualty* misunderstood Illinois law—West Bend should have sued in state court.

Under the UCC, a depositary bank's duty when receiving a check naming itself as payee—when the depositary is not the drawer's creditor and so cannot apply the funds to its own benefit—is to follow the drawer's instructions. Gizynski insists that those instructions were (or would have been) to pay him; dis-

Nos. 11-1811 & 11-1959   5

credit Gizynski (as the district judge did) and the record is silent. A plaintiff loses when the facts cannot be ascertained.

West Bend contends that *Deland v. Dixon National Bank*, 111 Ill. 323 (1884), puts the burdens of production and persuasion on the Bank, but that decision long predates the UCC and dealt with events distinct from the depositary-bank-as-payee situation that we addressed in *Mutual Service Casualty*. Opinions from the nineteenth century do not justify upsetting decisions we issued in 2001 and 2004. (West Bend also cites cases that Illinois decided in 1896, 1922, and 1926—yet nothing more recent.)

At the end of its brief West Bend cursorily advances what had been its principal contention in the district court: that §5 of the Uniform Fiduciaries Act, 760 ILCS 65/5, makes the Bank liable because it was Gizynski's creditor. The section provides in part: "If [a check] is payable to a personal creditor of the [drawer's] fiduciary and delivered to the creditor in payment of or as security for a personal debt of the fiduciary to the actual knowledge of the creditor, or is drawn and delivered in any transaction known by the payee to be for the personal benefit of the fiduciary, the creditor or other payee is liable to the principal if the fiduciary in fact commits a breach of his obligation as fiduciary in drawing or delivering the instrument." West Bend contends that Gizynski was Belmont's fiduciary and committed a breach of his fiduciary obligations when issuing the checks for his own benefit.

Trying to demonstrate a breach of fiduciary duty by Gizynski would give West Bend the same sort of problem

we have been addressing: Gizynski says that he was an authorized recipient of rent money, and no one has contradicted him. The district court did not reach this issue, however, concluding instead that Gizynski was not Belmont's fiduciary. By the time he cut the checks, he was neither an investor (having sold all of his stock to Gad) nor a manager. He retained authority to sign Belmont's checks (Gad may have overlooked the need to cut him off after the sale of stock), but the district judge thought signing authority a ministerial rather than a fiduciary position.

Section 1 of the Uniform Fiduciaries Act defines "fiduciary" to include "a trustee under any trust, expressed, implied, resulting or constructive executor, administrator, guardian, conservator, curator, receiver, trustee in bankruptcy, assignee for the benefit of creditors, partner, agent, officer of a corporation, public or private, public officer, or any other person acting in a fiduciary capacity for any person, trust or estate." 760 ILCS 65/1(1). This is regrettably circular (a fiduciary is a person "acting in a fiduciary capacity"), but the idea seems to be that a fiduciary is a person with discretion to act on a principal's behalf. Gizynski did not have discretion to decide which of Belmont's debts would be paid. If Gizynski cut the checks without authority, then he was a thief or embezzler, but it is possible to misappropriate money without being a fiduciary. A bank guard is not the bank's "fiduciary" just because he knows the combination to its safe or can scoop money from the tellers' drawers.

Nos. 11-1811 & 11-1959 7

West Bend maintains that anyone authorized to sign a business's checks must be its fiduciary. It relies principally on *Prodromos v. Everen Securities, Inc.*, 341 Ill. App. 3d 718 (2003), yet that decision has nothing to do with check-signing authority. We have searched in vain for a decision in Illinois or anywhere else holding that everyone authorized to sign a check is a fiduciary for the purpose of the Uniform Fiduciaries Act. And the district court added that the Bank would be protected by §9 of that Act, 760 ILCS 65/9, because it lacked actual knowledge that Gizynski was not entitled to the money. See *Johnson v. Citizens National Bank of Decatur*, 30 Ill. App. 3d 1066, 1070–72 (1975).

We turn to Banco Popular's cross-appeal. After West Bend obtained its judgment and issued a citation to discover assets (which created a lien on Gizynski's funds, see 735 ILCS 5/2–1402(m)(1) and *In re Porayko*, No. 12-2777 (7th Cir. Jan. 28, 2013)), the Bank received about $62,000 from one of Gizynski's accounts. The money represented rents from some of Gizynski's other tenants. As we have mentioned, the Bank had a security interest not only in the real estate but also in the rental payments. But it did not enforce a direct-payment system or appoint a receiver to collect the rents on its behalf. That's why some rental money flowed through Gizynski's account. Both Gizynski and the Bank ignored West Bend's citation to discover assets (though copies had been served on each) when dealing with the rentals. Banco Popular contends that its security interest is senior to West Bend's lien—and, if so, then the Bank keeps the money—but the district court

8                                                   Nos. 11-1811 & 11-1959

held that a security interest in rents can be perfected only through possession, so that West Bend has the senior claim. The district court directed the Bank to turn these funds over to West Bend. Order of March 24, 2011, revising a decision reported at 2010 U.S. Dist. LEXIS 136267 (N.D. Ill. Dec. 23, 2010).

An assignment of future rental payments is outside the scope of the Uniform Commercial Code, see UCC §9–109(d)(11), but at common law still creates a security interest. See *Bloomfield State Bank v. United States*, 644 F.3d 521 (7th Cir. 2011). The Bank's interest is senior to West Bend's because an assignment is perfected on recordation. See *Travelers Insurance Co. v. First National Bank of Blue Island*, 250 Ill. App. 3d 641 (1993). The Bank's problem is a further rule of Illinois law: when rentals are paid directly to the debtor, the security interest evaporates. See *Fidelity Mutual Life Insurance Co. v. Harris Trust & Savings Bank*, 71 F.3d 1306, 1309 (7th Cir. 1995) (Illinois law); *In re Wheaton Oaks Office Partners L.P.*, 27 F.3d 1234, 1244–45 (7th Cir. 1994) (Illinois law). To take full advantage of an assignment, a creditor must arrange for the tenants to pay it directly through a lockbox, or for a third party such as a receiver to take possession for the lender's benefit. See *Comerica Bank–Illinois v. Harris Bank Hinsdale*, 284 Ill. App. 3d 1030, 1035 (1996). When as in *Bloomfield State Bank* the dispute concerns the priority of interests in rent not yet due, the status of rentals in the debtor's possession is unimportant; but here the only sums in dispute are those that found their way into Gizynski's hands before being applied to his loans at the Bank.

Case: 1:09-cv-00354 Document #: 215 Filed: 04/10/13 Page 9 of 10 PageID #:2917
Case: 11-1811    Document: 00711973447    Filed: 04/10/2013    Pages: 10

Nos. 11-1811 & 11-1959 9

The Bank believes that the rule abrogating its security interest to the extent that rents come into the debtor's possession makes little sense. Perhaps that's so, though the limitation might reflect the fact that, once funds become commingled, third parties lack notice of the security interest. Our opinion in *Fidelity Mutual* provides some background about the doctrine's origins. 71 F.3d at 1309–10. See also Julia P. Forrester, *Still Crazy after All These Years: The Absolute Assignment of Rents in Mortgage Loan Transactions*, 59 Fla. L. Rev. 487 (2007). But in diversity litigation it is enough to understand what state law *is*; if the doctrine reflects a compromise that leaves everyone puzzled and frustrated (as compromises often do), still the federal court's job is implementation rather than revision. Litigants that want a court to make an adjustment in a doctrine of state law are wasting their breath asking for relief from the federal judiciary.

Illinois provides that a person who transfers funds in violation of the lien created by a citation to discover assets can be ordered to pay costs. See 735 ILCS 5/2–1402(h). That rarely matters to federal litigation, where losing litigants normally pay the winner's costs. See *Marx v. General Revenue Corp.*, No. 11-1175 (U.S. Feb. 26, 2013); Fed. R. Civ. P. 54(d)(1). A provision for attorneys' fees can have a greater effect, because in diversity litigation state law governs this subject. The standby American Rule, under which the parties bear their own legal expenses, applies only when state law and the parties' agreement are silent.

The district court ordered the Bank to pay West Bend's costs in connection with the proceeding to recover the $62,000 in rentals. But the actual award includes about $8,000 in attorneys' fees as well as costs. Subsection 1402(h) does not authorize awards of legal fees. Such an award depends on §5/2–1402(f)(1), which permits a court to treat evasion of the citation as a form of contempt. *Mid-American Elevator Co. v. Norcon, Inc.*, 287 Ill. App. 3d 582, 591 (1996), holds that a court may award attorneys' fees as part of the penalty under §5/2–1402(f)(1). (That is the current statute; *Norcon* discussed its predecessor, but this aspect of the law did not change.) The district court referred to subsection (f)(1) but did not find that the Bank had contumaciously evaded the citation. To the contrary, it wrote: "West Bend has not demonstrated, and the Court . . . cannot find, that Gizynski's conduct rose to the level of contempt." If Gizynski did not engage in contempt by turning rentals over to the Bank, it is hard to see how the Bank could have engaged in contempt by using the money to reduce the balance on Gizynski's loan. For all we can see, the Bank believed honestly—though mistakenly—that its security agreement gave it a claim superior to West Bend's.

The order requiring the Bank to pay West Bend's legal fees is reversed. The remainder of the judgment is affirmed.

3-19-13